HAYES v. STEELE *et al.*

Agent: CONVEYANCE: EQUITY. Where a non-resident grantor of real estate acquiesces in the payment of the purchase-money to a person not originally authorized to receive it, he will be held to have ratified the act; and equity will compel him to place on record the deed of *his* grantor, in order that a perfect title to his own grantee may be disclosed.

*Appeal from Howard District Court.*

FRIDAY, JUNE 23.

PETITION in equity to compel defendants to place upon record a deed from Ichabod R. Philpot and wife, to Thomas Steele for the S. W. ¼ of section 27, in town 100 north, range 14 west. Decree for plaintiff. Defendants appeal. The facts are stated in the opinion.

*D. W. Poindexter* for the appellants.

*Levi Bulis* for the appellee.

DAY, Ch. J. — The land in controversy was owned by David Steele. The deed for the same, at the instance of David Steele, was executed to his son, Thomas Steele, by Ichabod R. Philpot, and was placed in the hands of J. A. Wentworth, to be carried to Iowa and placed on record. On the 8th of June, 1868, the plaintiff wrote the defendant inquiring his price for the land. On the 13th of June he again wrote, stating that he had been informed by John A. Wentworth that he was authorized to act as agent for sale of the land, and that the price was $600. Plaintiff offered this price, and informed Steele that he preferred dealing with him direct, and that if he would send a deed to the postmaster, or any other person he might select, plaintiff would remit the money. Upon receipt of this letter David Steele wrote to J. T. Williams, the postmaster at Le Roy, as follows: " At the suggestion of Mr. David Hayes of

your place I send to you a deed conveying a quarter section of land in Howard county, Iowa, from my son, Thomas W. Steele, to David Hayes, upon his getting a bank draft for $600 on Boston or New York, payable to my own order, and forward to me." Upon the same day David Steele wrote David Hayes, as follows: " I received two letters from you this day. The last you say you will take our quarter section of land in Iowa at $600. I send herewith a deed, directed to the postmaster at Le Roy, Minnesota, for him to deliver to you on your getting a draft on Boston or New York, payable to my own order, and direct to me. You see the deed is from Thomas M. Steele, my son, as it might be more readily conveyed to a purchaser. The deed to my son is out there; John A. Wentworth carried it out there for record." The plaintiff delivered drafts to the amount of $600 to Williams and received the deed of Thomas Steele.

Subsequently, learning that Wentworth had not placed the deed from Philpot to Thomas Steele upon record, he directed Williams not to forward the draft until the Philpot deed was recorded. Plaintiff also wrote Steele as follows: " Your deed came all right, and I have left the pay with the postmaster here, as you ordered, and got my deed and sent it to the office to be recorded. The deed which you sent out here by Mr. John A. Wentworth, for record, has not been recorded, and he refuses to give it to me or have it put on record, consequently I have ordered the postmaster here to hold the funds until you have that matter all right, which he will do. Let me hear from you soon in regard to it." Williams also wrote Steele and received in reply the following: " Received your letter to-day. Had written to Mr. Wentworth. Presume the matter is satisfactory. You may send on the drafts."

Subsequently Williams received letters from Steele, demanding the drafts or the deed. Afterward Williams was directed by Steele not to send the draft, as he intended to

Hayes v. Steele.

make Hayes re-deed the land. It is very questionable whether the agency of Williams originally extended to the receiving of the drafts. The letters seem to contemplate that he should deliver the deed to Hayes, when Hayes directed the drafts to the defendant Steele. Had Steele repudiated the authority of Williams to receive the drafts, upon being advised that they were delivered to him, and refused to have any communication with him in regard to them, he would occupy a position with respect to this controversy different from that in which he is now placed. He is advised by Hayes not only that the pay is left with the postmaster, but that it is so left *as ordered.*

He discovered Hayes' understanding to be that Williams had authority to receive the pay. Under such circumstances he is called upon to declare his understanding. His mere silence would probably amount to a ratification of what had been done. But he does more. He writes to Williams and directs him to forward the drafts, and thus recognizes his authority to receive them. The fact that Hayes gave direction to Williams not to forward the drafts does not affect the completion of the contract. When Hayes received the deed, in consideration of the drafts, he lost control over them, so long as he retained the deed. And when Steele recognized the authority of Williams to receive the drafts, he acquired control over them, and could have compelled Williams to deliver them. Thus the contract was completed, and the defendant became liable to furnish a title in all respects perfect. The decree of the district court must, therefore, be affirmed.

Inasmuch, however, as the plaintiff improperly and wrongfully procured Williams to retain the purchase price, the only defect in the title being in the absence from record of a deed to plaintiff's grantor, the plaintiff will pay the costs in this court and in the court below.

As thus modified the decree of the district court is

Affirmed.