JULIA B. METCALF *vs.* WILLIAM O. WILLIAMS.

Suffolk.   March 10. — May 9, 1887.   FIELD, C. ALLEN, & GARDNER, JJ.,
absent.

A. bought one hundred shares of stock in a corporation through B., who acted for her as a friend, without pay. One month later, B. ordered a broker to buy one hundred shares more on sixty days' credit, and deposited the first purchased shares as security. Ten days afterwards, A. asked B. how she should know, if anything happened to him, that she had any stock. He said he would give her something to show her title, and wrote, signed, and delivered to her the following order, addressed to the broker: "The 100 shares of stock you purchased for me" on a day named, "for which you have been paid, and the 100 shares you purchased for me" on a later day named, "buyer 60, receiving from me the one hundred shares of stock as collateral security, were bought by me for A. Please deliver the stock to her, if she calls for it at any time." Six months afterwards, A. ordered B. to sell her stock, supposing that she had the original shares; and a hundred shares regarded as hers by B. were sold at a loss. A. subsequently attempted to repudiate the transaction set forth in the above order, and brought an action against B. for the conversion of the first one hundred shares of stock. *Held*, that A. must be presumed to have understood the contents of the written order; that her silence ratified the purchase, and consequently the pledge; and that the action could not be maintained.

---

* See also *Blanchard* v. *Cooke*, ante, 207, 222.

HOLMES, J. This is an action of tort for the conversion of one hundred shares of stock. On November 22, 1883, the plaintiff purchased one hundred shares through the defendant, who acted for her as a friend, without pay. On December 21, 1883, the defendant ordered a broker to buy one hundred shares more on sixty days' credit, and deposited the first purchased shares as security. This deposit is the conversion relied on. The parties disagreed in their testimony as to the defendant's authority to make this purchase.

On December 31, 1883, the plaintiff asked the defendant how she should know, if anything happened to him, that she had any stock. He said he would give her something to show her title, and wrote, signed, and delivered to her the following order, addressed to the broker:

" The 100 shares of N. Y. & N. E. R. R. stock you purchased for me November 22d, for which you have been paid, and the 100 shares you purchased for me December 21st at 19⅜, buyer 60, receiving from me the one hundred shares of stock as collateral security, were bought by me for Mrs. Julia B. Metcalf. Please deliver the stock to her, if she calls for it at any time."

On July 8, 1884, after some dealings by the defendant, which are not material to our decision, the plaintiff ordered the defendant to sell her stock, supposing, as she testified, that she had the original shares; and a hundred shares regarded as hers by the defendant were sold at a loss. The transaction set forth in the order was not repudiated by the plaintiff until afterwards.

The defendant asked the court to rule, that, if the facts were as above stated, the plaintiff was presumed to know the contents of the order; and that, if she made no objection to the defendant's purchase of the second hundred shares, or to the use of the first hundred shares as security, she had ratified the defendant's action, he having acted in good faith (as on the findings he must be taken to have done). The judge declined to rule as requested; found that the plaintiff did not understand the contents of the order, and did not ratify the pledge of the first hundred shares; and found that the plaintiff was entitled to recover.

We are of opinion that the rulings requested should have been given; and that the finding for the plaintiff was not justified, in

view of the facts above stated.  It is true that the order was not, in a strict sense, a document of title, that is to say, the plaintiff did not get her title from the order, but had it before, the original purchase having been made for her as an undisclosed principal.  But the plaintiff asked for the order as a practical means of establishing her title as between herself and the defendant, and she accepted it as purporting to set forth his statement of what her title was as against him.  As between herself and the defendant, if she refrained from reading it, she did so at her peril; and, in the absence of fraud, he was entitled to assume that she had read it.  However, we do not gather that she denied having read the order, but only that she denied having understood it.  If we are right, the plaintiff's case is weaker than if she had not read the order.  Whether or not she was bound to find out the meaning of the language of the stock exchange, if she did not know it, the only language of that sort is "buyer 60." The purchase of the second hundred shares is set forth in plain English, as is also the fact that the first hundred was received by the broker in connection with the purchase.  If we are to listen to the suggestion that the words " collateral security " were unintelligible, there was enough to show to the meanest understanding that the first hundred shares had been used in some way to get the second.   The defendant had a right to assume that she knew so much at least.

What then was the position, as the plaintiff must be taken to have known it?  Assuming that there had been a conversion, a question which we do not discuss, it was not a simple conversion by a stranger.  The conversion was a pledge or mortgage by one who had been the plaintiff's agent to purchase the stock, and who remained her agent throughout all her dealings with it, who seems to have had the stock in his name, and who assumed in good faith to be acting as her agent and by her authority in using the stock as he did.  If he exceeded his authority, she could ratify his act, and any expression of assent on her part, either by words or conduct, would bind her, not on principles of estoppel, but as in other cases of election.   *Wellington* v. *Jackson*, 121 Mass. 157, 159.  *Smith* v. *Cologan*, 2 T. R. 188, *n.*   See Com. Dig. Election (C 2).   *Oakes* v. *Manufacturers' Ins. Co.* 135 Mass. 248, 249.  It is not necessary to consider

whether, if there were nothing more in the case, the silence of the plaintiff might not have amounted to an expression of assent. See *Foster* v. *Rockwell*, 104 Mass. 167, 172; *Philadelphia, Wilmington, & Baltimore Railroad* v. *Cowell*, 28 Penn. St. 329; *Ladd* v. *Hildebrant*, 27 Wis. 135; Story on Agency, §§ 256, 258. For there is more in the case. The plaintiff was notified by the order that the pledge or use of her stock was incident to the purchase of other stock, and that the defendant assumed that this latter purchase was by her authority, but that, as between himself and the broker, the defendant was responsible. She knew also that the stock was a fluctuating one. If she had a right to repudiate, and did repudiate, the transaction, the defendant could take immediate steps to prevent loss to himself. If she did not, he would naturally rest on the assumption that his understanding as to his authority was correct, and his conduct satisfactory. To be silent under these circumstances was plainly to assent to the purchase, and even on the principles of estoppel, the plaintiff could not repudiate it, at a later date, to the defendant's loss.

If the purchase was ratified, then the pledge was ratified also. The transaction had to be accepted or repudiated as a whole. The purchase was founded upon the pledge. The plaintiff could not ratify the purchase, and then, at a later date, repudiate the pledge upon which the purchase depended, and which was one of its terms.                    *Finding set aside.*

*W. H. Powers*, for the defendant.

*A. M. Lyman*, (*C. F. Perkins* with him,) for the plaintiff.