SAUNDERS v. MONTGOMERY et al.†
(Court of Civil Appeals of Texas. Jan. 28, 1911. Rehearing Denied Feb. 23, 1911.)

BROKERS (§ 84*)—RIGHT TO COMMISSIONS.

Where a broker procured a purchaser of timber under a contract of sale showing that the number of feet stated therein was a mere estimate, not binding upon the parties, and that the purchaser could not be required to accept and pay for any tract so situated as to make it impossible or impracticable to log the timber to reasonable advantage, so that the vendor could only compel the purchaser to pay for the portion which he could show was so situated that it could be practically logged, the broker suing for his commissions would be compelled to prove the extent of such portion, he being entitled to commissions only on that part of the timber, and, where no evidence was offered to show what portion of the timber the purchaser was required to take, there could be no recovery for commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 104, 105; Dec. Dig. § 84.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by J. W. Saunders against E. F. Montgomery and others. There was a directed verdict for defendants, and plaintiff appeals. Affirmed.

F. J. Duff and A. L. Davis, for appellant. W. D. Gordon and Oliver J. Todd, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellee E. F. Montgomery to recover the sum of $6,250 alleged to be due as commissions for the sale by appellant, under a contract with appellee, of 50,000,000 feet of pine timber. Plaintiff alleged, in substance: That on or about January 15, 1907, defendant Montgomery, owing, or claiming to own, 50,000,000 feet of standing pine timber in Newton county, Tex., or claiming to have the right to sell the same, contracted and agreed with plaintiff· that, if plaintiff would procure a purchaser for said timber at a price not less than $2.50 per thousand feet, that defendant would pay to plaintiff a commission of 5 per cent. of such price for said services. That, acting under said contract, plaintiff procured a purchaser, to wit, the Orange Lumber Company, and that through the efforts of plaintiff the said purchaser entered into a valid and binding written contract with defendant, by the terms whereof it agreed to purchase said timber at the price of $2.50 per thousand feet. That said Orange Lumber Company was, and at all times since has been, amply solvent ·and fully ·able ·to carry· out said contract, and that said contract was approved and accepted by defendant, whereupon defendant became liable to plaintiff for plaintiff's commissions in· the amount sued for, with 6 per cent. interest from the date of the contract. The defendant answered by general demurrer and general denial, and by special plea set up a contract for the purchase from him by the Orange Lumber Company of 50,000,000 feet of pine timber, which contract he admits was procured by the plaintiff, but he expressly denies that he ever agreed to pay plaintiff a commission for obtaining said contract, and only agreed to pay him 5 per cent. of the amount realized by defendant from said contract, and avers that he has never received anything on said contract. He further avers that, in accordance with his said agreement with plaintiff, he transferred and assigned to him 5 per cent. of the amount that might become due under said contract, and asks that the Orange Lumber Company be made a party, and that he recover against said company 95 per cent. of the amount due under said contract, and that plaintiff be required to join in said suit against said company and be not allowed any recovery against this defendant.

On the trial in the court below a plea of privilege filed by the Orange Lumber Company was sustained, and that branch of the case between defendant Montgomery and defendant Orange Lumber Company was transferred to Harris county. The case then went to trial as between the plaintiff and the original defendant, and, after both sides had introduced their evidence, the court instructed the jury to return a verdict in favor of defendant, which they accordingly did. From the judgment rendered upon said verdict, the plaintiff prosecutes this appeal.

The evidence is in substance as follows: The plaintiff, J. W. Saunders, testified: That during the year 1907 he was engaged in the business of selling pine timber stumpage. That in January of that year he met the defendant Montgomery in Beaumont. That the defendant Montgomery said to plaintiff: "I have 50,000,000 feet of pine stumpage." And that he further said: "I will give you 5 per cent. commission if you can find me a buyer." That plaintiff then took defendant, and that they went to Houston, and to the office of the Orange Lumber Company, where a written contract was entered into between the defendant Montgomery and the Orange Lumber Company, by which the lumber company agreed to purchase 50,000,000 feet of timber from the defendant Montgomery. That at the time of the first conversation in Beaumont, and before the contract was made with the Orange Lumber Company, the defendant Montgomery exhibited to plaintiff maps and blueprints of the land, showing the land owned by the defendant in colors, and the esti-

mate of the amount that each tract would cut. The contract between Montgomery and the Orange Lumber Company, the execution of which was admitted by all parties, and which was introduced in evidence by plaintiff, reads as follows: "State of Texas, County of Harris. This contract of agreement made and entered into by and between E. F. Montgomery of Burkeville, Newton county, Texas, hereinafter known as first party, and the Orange Lumber Company, a Texas corporation with its principal office in Houston, Harris county, Texas, hereinafter known as second party, witnesseth, as follows, to wit: That first party agrees to sell and convey and second party agrees to purchase and pay for all of the merchantable pine timber at the price of two and $50/100$ ($2.50) dollars per thousand feet, as per Doyle Scale; that is upon the following described tracts or parcels of land, situated in Newton county, Texas, and in the state of Louisiana, as hereinafter further provided: 2,000 acres of the S. Swift survey, estimated to cut 5,000 feet per acre. 272 acres of the Jno. Spears survey, estimated to cut 4,000 feet per acre. 300 acres of the D. L. D. Moore survey, estimated to cut 50,000 feet per acre. 400 acres of the E. M. Nicholson survey, estimated to cut 6,-000 feet per acre. 322 acres of the W. H. Stark survey, estimated to cut 6,000 feet per acre. 234 acres of the F. Deason survey, estimated to cut 4,000 feet per acre. 320 acres of the W. N. Shaw survey, estimated to cut 3,000 feet per acre. 175 acres of the Thos. Byerly survey, estimated to cut 8,000 feet per acre. 80 acres of the Mary Davlin survey, estimated to cut 7,000 feet per acre. 200 acres of the Mary Davlin survey, estimated to cut 6,000 feet per acre. 280 acres of the Mary Davlin survey, estimated to cut 4,000 feet per acre. 80 acres of the T. Hickman survey, estimated to cut 10,000 feet per acre. 177 acres of the Dan Doncho survey, estimated to cut 6,000 feet per acre. 110 acres of A. M. Bevill survey, estimated to cut 6,000 feet per acre. All the above in Newton county, Texas. Eighty acres situated in Louisiana, opposite the Thos. Byerly survey in Newton county, Texas, estimated to cut 8,000 feet per acre. The second party agrees to begin to estimate the pine timber on the above-described lands within thirty days from the date hereof, and to complete said estimation as rapidly as possible. It is further understood that, in estimating same timber as aforesaid, that only such pine timber as is known as 'floating timber' shall be estimated and which will measure ten inches and up in diameter at the usual and customary place of estimating pine timber. The first party shall furnish to second party within ten days after the estimate of each respective tract, as aforesaid, a complete abstract of title to such tract or tracts of land. If the record title of the first party to said tract or tracts of land is good, then, second party shall purchase at said price named above said timber upon said tract or tracts of land. If, however the record title of first party is not good and defects are pointed out by the attorney of second party, first party shall have sixty days in which to cure and remove said defects, and, if first party succeeds in removing said defects to the satisfaction of Baker, Potts, Parker & Garwood, attorneys, within said time, then the sale of said timber as aforesaid shall be consummated at the price as aforesaid. If, however, title to said tract or tracts of land, or either of them, is not good and first party cannot remove said defects to the satisfaction of said attorneys within said sixty days after they are placed with them, the second party shall have the right to cancel this contract, so far as it affects such tracts as title thereto is defective, and no other. It is understood that an estimate of the pine timber upon said tract and tracts of land has been made and reported to second party, as designated above; and it is further understood that the second party is not satisfied to accept said estimate as final, and will within the next thirty days begin to have each of the said tracts re-estimated as aforesaid and will report such re-estimate to the first party. If this purchase is consummated, it shall be on the basis of said re-estimate. If, according to said re-estimate the amount of merchantable pine timber upon any one of the said tracts is materially less than the amount indicated above, then, first party shall have the right and privilege of refusing to carry out this sale upon the basis of said re-estimate upon that particular tract, upon which the said re-estimate shows an amount materially less than above designated, and that tract only. It is further understood and agreed by and between the parties hereto that the first party binds himself to deliver to the second party within six months from date hereof, and the second party agrees to purchase, and pay for, an additional amount of pine timber of twenty-four million (24,000,000) feet, at the same price and on the same estimate basis as herein provided for; said timber to be located in Newton county, Texas, and in the state of Louisiana, opposite Newton county, Texas, and said timber to be located also within three miles of the Sabine river, or some tributary stream thereof that is cleaned out for the purpose of running or driving logs, that is acceptable to second party, or its nominee. The three-mile limit above referred to shall be construed as to mean three miles from the immediate center of any particular tract that may be offered under this contract, but second party is not to be required under this contract to accept a narrow strip of land, the center of which may technically come within the aforesaid three-mile limit. The second party is not required in any provision or provisions of this contract to accept and pay for any tract or tracts of land which may be so situated, surrounded, or located as to make it impossible or impracticable to log

same to reasonable advantage. The party of the first part agrees to pay all expenses incurred in the securing of the timber to be delivered under this contract, including surveying the lands, submitting abstracts and acceptable titles to the attorneys of the second party. It is hereby understood and agreed that either party thereto shall have the right and privilege to cancel this contract as to the additional twenty-four million (24,000,000) feet of timber by giving thirty days' written notice of their intention so to do to the other party. It is hereby understood and agreed that second party is to have not less than ten years to remove the timber on any of the above-described tracts of land, and not less than fifteen years on the additional twenty-four million (24,000,-000) feet, which is to be delivered under this contract. Hereunto witness the signatures of the parties hereto in duplicate this the 25th day of January, A. D. 1907. [Signed] E. F. Montgomery. The Orange Lumber Company, by R. M. Farrar, Vice President."

Upon the same day, and immediately after the execution of this contract, appellee Montgomery executed and delivered to appellant the following instrument: "This indenture, witnesseth: That, whereas, J. W. Saunders has been instrumental in my selling to the Orange Lumber Company certain timber in Newton county, Texas, and for and in consideration of his services, I agree that the Orange Lumber Company shall retain for him out of said sale five per cent., and remit to him out of each transaction the amount of five per cent. aforesaid. There are other lands that I own, and that I contemplate buying and contracting for, both in my name and in the name of Montgomery & Hicks, and as J. W. Saunders has been instrumental in our making sales, and is still in position to help us, and in consideration of those facts and of other valuable considerations, we agree to pay him a commission of five per cent. on those sales when made; he, however, is to give us such time as we may demand of him, and help us in the proposition as we demand and deem is necessary from him. This contract is written in plural, but it is intended to cover any lands owned by Mr. Montgomery, the signer, or Montgomery & Hicks. The lands to be located are in Newton, Jasper, and Sabine counties, Texas, or across the river opposite those counties in Louisiana. This contract covers and includes only timbered lands that are sold to the Orange Lumber Company per their contract this day made with E. F. Montgomery and in bodies to other parties, and all sales of land under this agreement are to be contracted or sale agreed upon within six months from date hereof. This 25th day of Jan., 1907. Witness my hand, this ——— day of January, A. D. 1907. |Signed] E. F. Montgomery. Witness: N. E. Meador."

Appellant testified that in accepting this assignment of 5 per cent. of the amount that might become due by the Orange Lumber Company. under its contract with Montgomery he did not agree nor intend to cancel Montgomery's liability to pay him 5 per cent. commissions on the amount of the consideration for the sale to the lumber company, but he also testified: "It is a fact that I decided that I would rather look to the Orange Lumber Company than to Mr. Montgomery for the payment of my fee. They became my paymasters. I wanted to collect my money out of them. I took this contract for that purpose." He also testified that, under his oral contract with Montgomery, he was to perform no other service than to find a purchaser, and that there were no conditions or terms in said contract which he had not performed, and that he had never been called upon by Montgomery to do anything further in connection with the sale of said timber. The estimate as to the number of feet upon the various tracts of land mentioned in the contract before set out were made by the defendant Montgomery. Plaintiff has never been paid anything for procuring said contract. The Orange Lumber Company, though often requested by Montgomery to have the timber on said lands estimated and to comply with its contract, has failed and refused to do anything in the way of carrying out the terms of said contract, and has not taken or paid for any of said timber.

Under appropriate assignments of error, appellant assails the charge of the court instructing the jury to find a verdict for the defendant Montgomery on the ground that the evidence before set out would authorize a finding by the jury that appellant only undertook to find a purchaser for the 50,-000,000 feet of timber offered for sale by Montgomery, and, having found a purchaser ready, able, and willing to buy upon the terms and for the price named by Montgomery and the latter having entered into a binding contract for the sale of the timber to said purchaser, appellant has earned and was entitled to recover his commissions, and this right to recover his commissions from Montgomery was not affected by appellant's subsequent agreement to accept his compensation out of the money to be paid by the purchaser.

The propositions advanced by appellant are absolutely sound, but they are not applicable to the case made by the evidence. According to appellant's testimony, Montgomery agreed to pay him a commission of 5 per cent. if he would find him a purchaser for 50,000,000 feet of pine timber situated as described in the contract at a price of $2.50 per thousand feet. If under this agreement appellant had found a purchaser able, willing, and ready to buy said timber, and Montgomery had entered into a binding contract with such purchaser for the sale of the timber, appellant would be entitled to his commission. Conkling v. Krakauer, 70 Tex. 735,

11 S. W. 117; Brackenridge v. Payne, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593. Or, if appellant had procured a binding contract for the purchase of any part of said timber and this contract was accepted by Montgomery, the latter would be liable for appellant's commissions of 5 per cent. of the purchase price of the timber so contracted to be sold, but in a suit for such commissions the burden would be upon appellant to show the amount and value of the timber so contracted to be sold.

It may be conceded that the contract between Montgomery and the Orange Lumber Company is not a mere option, and that the lumber company could not defeat its liability thereunder by refusing to have an estimate made of the amount of timber on the several tracts of land, or by making a fraudulent estimate, or making frivolous and unreasonable objections to Montgomery's title, still the contract was not an unconditional contract of purchase and sale of the 50,000,000 feet of timber claimed to be owned by Montgomery, and could only be held binding on the lumber company as to such portion of the timber as might be shown to be of the kind and be situated as required by the terms of the contract. Appellant's right of recovery against Montgomery is measured by Montgomery's right against the Orange Lumber Company under the contract of sale, and the extent to which this contract is enforceable is not shown by any evidence in this record. Upon the verbal contract between appellant and Montgomery, no warranty can be implied that the several tracts of land mentioned in the contract with the lumber company had thereon the number of feet of timber mentioned in said contract, nor that all of said timber was so situated as to make it practicable for the purchaser "to log it to reasonable advantage." The contract shows upon its face that the number of feet stated was a mere estimate, and was not binding upon the parties. If appellant had with his agreement with Montgomery procured an unconditional contract with the lumber company to take 50,000,000 feet of timber from Montgomery upon the terms and at the price named, he could have held Montgomery liable for his commissions on that amount because, when Montgomery authorized him to sell that much timber, there was an implied warranty that he owned that amount and appellant could have relied thereon. But the contract procured by appellant was not unconditional as to any specific amount of the timber. By its express terms the purchaser was not required "to accept and pay for any tract or tracts of land which may be so situated, surrounded or located as to make it impossible or impracticable to log same to reasonable advantage." Under this provision, it is clear that Montgomery could only compel the lumber company to accept and pay for that portion of the timber which he could show was so situated that it would be practicable for the Orange Lumber Company to log it to reasonable advantage. This burden would be upon Montgomery in a suit by him against the purchaser to enforce performance of the contract, and a like burden was upon appellant in this case. No evidence was offered upon this issue, and there was nothing by which the jury could determine what portion, if any, of the timber the lumber company was required to take.

Appellant could only recover his commissions upon the value of the timber which the contract bound the lumber company to take, and, in the absence of evidence showing what this amount was, he was not entitled to recover anything, and the trial court properly so instructed the jury.

It follows that the judgment of the court below should be affirmed, and it is so ordered.

Affirmed.