AMANDA MILLER, Appellant, v. CHATSWORTH SAVINGS BANK, Appellee.

PRINCIPAL AND AGENT: Authority of Agent—Violation—Ratification. A principal must be deemed to ratify irrevocably the act of his agent in making an investment contrary to instructions when, with full knowledge of the said violation, the principal for some three years accepts and retains all benefits resulting from such investment, and otherwise manifests his acquiescence.

Headnote. 1:    2 C. J. p. 493.

Headnote 1:    21 R. C. L. 933.

*Appeal from Sioux District Court.*—C. C. BRADLEY, Judge.

MARCH 15, 1927.

Plaintiff (as principal) predicates damages against the defendant (as agent) for violation of her instructions and direc-

tions in the investment of her money in a mortgage. Defendant answers by general denial, and pleads ratification of its act by plaintiff. The trial court sustained the defendant's motion for a directed verdict. Plaintiff appeals.—*Affirmed.*

*Klay & Klay* and *Henderson, Fribourg, Hatfield & Fribourg,* for appellant.

*L. R. Ball* and *Van Oosterhout & Kolyn,* for appellee.

DE GRAFF, J.—The logic and law of this case are found in the answers to these questions: First, was the defendant-bank the agent of the plaintiff in the instant transaction? Second, did the defendant-bank act contrary to and in violation of the directions given it by the plaintiff in the investment of her money? Third, did the plaintiff, by her subsequent acts and conduct, ratify the transaction of negotiation and bargaining on the part of the defendant?

The relation of agency is the consensual relation existing between two persons by virtue of which one of them is to act for and on behalf of the other, and subject to his control. The consent in the instant case was expressly given by the plaintiff. This is undisputed. The defendant-bank did invest $4,000 belonging to the plaintiff. The money was left with the defendant-bank by the plaintiff to be loaned. The bank, therefore, became the agent of and not a debtor to the plaintiff. *Chapman v. First Nat. Bank,* 72 Ore. 492 (L. R. A. 1917F 300).

Did the bank act in disobedience of the instructions given by the plaintiff, in the investment made? The bank was under obligation, as an agent, to loan the money in good faith and in the exercise of due care. It was also obligated to make the loan in conformity to the instructions and directions of the principal.

The record facts are undisputed that, on or about April 1, 1921, the defendant-bank, through its cashier, orally agreed with the plaintiff to place the sum of $4,000 for her on a good, reliable mortgage on land in the vicinity of Chatsworth, Iowa, such mortgage to be subject to plaintiff's approval. The money was not so placed. It was loaned to one Clarence A. Plank, of Hawarden, Iowa, evidenced by a note for $4,000, bearing 7 per cent interest, dated July 1, 1921, due July 1, 1926, and secured

by a second mortgage to a $20,000 mortgage on a section of Brown County, South Dakota, land, distant 165 miles from Chatsworth. The plaintiff did not approve this loan in the first instance. She was not then informed by the cashier of the bank that the loan was secured by a mortgage on South Dakota land, although she was notified that the loan had been made. She assumed, upon notification from the cashier, that it was a loan on Iowa real estate.

The evidence warrants the finding that an agency relation existed between the plaintiff and the defendant, and that the defendant, as plaintiff's agent, violated her directions in making the loan in question. The determining question, therefore, is whether the plaintiff ratified the transaction of her agent, either by expressly accepting the benefits of the loan or by her failure to disaffirm the transaction within a reasonable time after being possessed with full knowledge of the attendant circumstances.

Ratification, in the law of agency, may be defined as the subsequent affirmance by the principal of an act previously done by another without authority or apparent authority, while purporting to act as agent. Ratification, therefore, although not a form of authorization, has a similar legal effect. Furthermore, to incur liability by ratification, the person affirming must, at the time of the affirmance, either have knowledge of the act and of all the material facts in relation to it, or be willing to take the risk as to the completeness and accuracy of such information as he has. Knowledge of the material facts is essential, but knowledge of the legal effect of these acts is not essential. *Kelley v. Newburyport & A. H. R. Co.*, 141 Mass. 496 (6 N. E. 745) ; *Russell v. Waterloo Thresh. Mach. Co.*, 17 N. D. 248 (116 N. W. 611) ; Restatement Law of Agency, American Law Institute, Chapter 6, page 87 *et seq.*

It is also well settled that it is the duty of the principal to repudiate the unauthorized act of his agent within a reasonable time after knowledge of the act of the agent comes to him. If he does not repudiate, the principal is held to have ratified. *Argus v. Ware & Leland*, 155 Iowa 583; *National Improv. & Const. Co. v. Maiken*, 103 Iowa 118; *Hayes v. Steele*, 32 Iowa 44; *Chariton Plumbing & Heating Co. v. Lester*, 202 Iowa 475; *Eau Claire Canning Co. v. Western Brokerage Co.*, 213 Ill. 561 (73 N. E. 430). Knowledge of the facts may either be actual or may be

inferred from facts justifying such an inference under the general rules permitting inferences from facts and circumstances. This means that a principal has knowledge of such other facts as, in the case of a person of ordinary prudence, exercising reasonable care respecting matters which concern him, would lead to knowledge of the material facts. Facts are material, within the meaning of the rule stated, if knowledge of them, according to the ordinary experience and habits of mankind, is essential to a fair and intelligent determination of the nature and extent of the transaction of which they formed a part.

It would be impossible to enumerate all the various kinds of acts which may manifest affirmance. It may be manifested by written or spoken word, or from the acts or conduct of the principal, indicating his approval, or it may be inferred from the known circumstances and his acts in relation thereto. Sufficient to state that the essence of ratification in the law of agency is the manifestation of a mental determination by the principal to affirm the act. The voluntary receipt and retention by the principal, with knowledge of the material facts, of the benefits of an act which he would legally be entitled to repudiate, are generally viewed as a ratification of the unauthorized act of the agent; and the mere fact that the acceptance and retention of benefits which would otherwise constitute ratification are accompanied by protestations by the principal does not prevent ratification. Of course, benefits forced upon the principal or surreptitiously included among those voluntarily received are not voluntarily received, and do not classify within the rule of ratification.

In the light of these legal principles, let us inquire into the facts of the case at bar. It is disclosed that, shortly after the mortgage transaction was consummated, the plaintiff learned that the mortgage was on land situate in South Dakota. This information came to her about August 2, 1921. The mortgage bore date July 1, 1921. Prior to that date, to wit, June 28, 1921, the cashier of the bank, who negotiated the deal, wrote the plaintiff, who was then living in Chicago, that he had succeeded in placing "your $4,000 on real estate as a second mortgage to the same party who now owes the $3,000, Mr. C. A. Plank of Hawarden, an attorney who is rated at about $100,000. This security is 640 acres of land worth $135 per acre, conservatively, with a first mortgage of $20,000, and this second mortgage will place the

total encumbrance at $37.50 per acre. The farm has $9,000 worth of improvements on it, and you will be assigned an insurance policy for $3,000, as collateral, and mortgage will bear 7% interest, payable semi-annually on July 1 and February 1 of each year.''

It is apparent that the plaintiff thought that the new investment had been made on an Iowa farm, known as the ''Early farm,'' on which she previously had a $3,000 mortgage, which had been paid, and constituted part of the $4,000 in question. On July 19, 1921, she wrote the bank, inquiring if the mortgage for $4,000 on the Early farm had been recorded. About that time, the cashier, Jensen, of the defendant-bank resigned, or left the employ of the bank, and V. E. Ball was appointed cashier. On July 22, 1921, the new cashier answered plaintiff's letter, and told her that he was unable to find the papers with reference to the mortgage mentioned in her letter, but indicated that he would make further investigation. On August 1, 1921, Cashier Ball wrote the plaintiff, and informed her that the mortgage papers had been found, and that they were in her safety-deposit box in the bank.

At this time, the mortgage papers were sent to the plaintiff for her inspection, and, as the letter recited, that she could ''be the better able to judge as to whether or not the transaction pleases you.'' It is also stated in that letter:

''It seems the former cashier should have secured your approval in this matter, as well as 'all other such matters, and I presumed he had. The papers seem to be all right although the mortgage is upon land in Brown County, South Dakota. Kindly return the papers under registered mail if they meet with 'your approval and if you want them kept with the other papers here.''

The plaintiff did, in fact, return the papers to the bank.

On August 2, 1921, plaintiff was advised by the cashier as to the interest and insurance policies on the mortgaged property. On August 6, 1921, plaintiff wrote the cashier of the defendant-bank, in answer to his letter of August 1st, in which letter she stated that she was not aware that Cashier Jensen had placed her money on South Dakota land, and ''quite naturally I am not at all pleased with his action. I feel that Mr. Jensen took advantage of this transfer without my approval of South Dakota land security, and, as there is quite a heavy encumbrance on the prop-

erty, possibly you could do something to secure additional security.'' It is not shown that the bank took any steps to secure additional security. It is quite evident that the plaintiff was skeptical of South Dakota land, as she asked for further information about the character of the farm, its location, and whether the land could produce enough to meet the interest on the incumbrance.

On August 17, 1921, the bank, through its cashier, gave to the plaintiff all the information that it could secure, in compliance with her request. It is quite complete in detail and conservative in statement. A letter was also sent to plaintiff, written by the mortgagor, Plank, which set forth a rather glowing account of the success of his farming activities and the value of the farm. In the letter from the cashier it is said:

''Mr. Plank's letter describes conditions very good but they are worse than described, and it will take many farmers, especially those of South Dakota, several years to recover unless there is a quick and large rise in prices obtained for farm products at the markets. Mr. Plank's letter should not be taken too seriously, however, as to his glowing account of his farming activities, as his records do not prove them any too successful.''

On December 28, 1921, the plaintiff received and retained the first semiannual interest of $140 on the mortgage note. On January 3, 1922, the plaintiff acknowledged receipt of the interest, with thanks for promptness in the remittance. She also expressed sympathy for the farmers in South Dakota, but said: ''I wish my money was on Iowa land, instead of South Dakota.''

She received and retained other installments of interest, up to and including July 1, 1923. She also received drafts for the proceeds of the insurance policies for two fire losses, which drafts she returned, as she did not desire a diminution of her mortgage loan.

It may be stated at this point that the defendant-bank had no financial interest in this transaction, and never received or requested any compensation for their services to Mrs. Miller. See 2 Corpus Juris, Section 372, page 717. It may also be said that at all times the bank gave the plaintiff full information, and, with the exception of Cashier Jensen's failure to notify her specifically in the first instance that the mortgage was on South Dakota land, the bank dealt with her frankly.

Plank, the mortgagor, died insolvent in 1924, and thereafter the first mortgage was foreclosed, and the land sold July 21, 1924. On December 17, 1924, plaintiff commenced this action.

Under well established principles of agency it must be said that, with the knowledge of the material facts shortly after the loan was made in violation of her direction, which she then well knew, she was obligated to disaffirm the deal within a reasonable time.

Do the recited facts establish an affirmance or ratification? We answer in the affirmative. The element of fraud, in the strict legal sense, is not involved, nor do the facts classify the theory of recovery on negligence. The damages are predicated on the violation of the agent in failure to respect her instructions in making the loan. It is apparent that she was as well advised of the situation as the bank was, after the loan had been made. She was bound to take some affirmative action, in order to hold the bank liable on this transaction.

Though we concede that her agent exceeded its authority, it was an act that the plaintiff, as principal, could ratify. Any manifestation of assent or affirmance on her part, either by words or conduct, bound her, not on the principle of estoppel, but, as in other cases, by election. *Metcalf v. Williams*, 144 Mass. 452 (11 N. E. 700) ; 2 Corpus Juris 520.

The case at bar presents more than mere silence on the part of the plaintiff. Had the plaintiff repudiated promptly, the defendant-bank could have taken immediate steps to prevent loss to itself, and this is a consideration that cannot be overlooked. The bank may well have understood that, although the loan was not satisfactory to her in the first place, by her conduct and acts she assented to and confirmed the loan. The bank had the right to rest on such an assumption. The fact of the loan and the power of the agent are interdependent and coexistent. The evidence not only fails to disclose a non-concurrence within a reasonable time, but her acts indicated a concurrence.

The trial court correctly ruled the motion to direct, and the judgment entered is—*Affirmed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.