## CONDOR PETROLEUM CO. v. GREENE.
### No. 2255.

Court of Civil Appeals of Texas. Eastland.
June 26, 1942.

Rehearing Denied Sept. 18, 1942.

714

Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellant.

Ben L. Cox and Doss & Overshiner, all of Abilene, for appellee.

GRISSOM, Justice.

This is a suit by Ernest H. Greene against Condor Petroleum Company to recover commissions for services rendered by Greene in procuring the building of a refinery and the resulting sale of oil to that refinery by defendant. From a judgment for plaintiff, the defendant has appealed. (For the former record of this case in the appellate court, see Greene v. Condor Pet. Co. et al., Tex.Civ.App., 121 S.W.2d 381; Id., 135 Tex. 215, 140 S.W.2d 844.)

Defendant's first point is that the court erred in refusing to render judgment for it on its plea of limitation under the two-year statute. Plaintiff's original petition was filed October 13, 1936. Citation was issued October 13th and delivered to the sheriff on October 14th. Service of citation was delayed on plaintiff's instruction until December 31, 1936. Defendant contends the statute of limitation was not tolled until December 31, 1936. Plaintiff instructed the sheriff to serve the citation and the citation was served. This contention must be sustained. First State Bank & Trust Co. v. Ramirez, 133 Tex. 178, 126 S.W.2d 16, 18.

Plaintiff alleged defendant agreed to pay him a 10% commission on oil sold as a result of his efforts in procuring the building of a refinery which he caused to be built on defendant's lease, and the resulting sale of oil by defendant to the refinery. Plaintiff alleged that if defendant did not agree to pay him a 10% commission on such sale of oil it agreed to pay him a commission for his services in procuring the building of a refinery and the resulting sale of oil to it and that defendant was obligated and bound to pay him a reasonable commission which he alleged was 10% of the amount of the sales. Wherefore, plaintiff prayed judgment for a reasonable commission on said sales.

In the second count plaintiff alleged that if defendant did not expressly contract and agree to pay him a commission on the sale of oil that defendant requested plaintiff to perform valuable services for it; that he performed said services and was entitled to recover the reasonable value of his services.

If plaintiff was entitled to recover a commission on the sale of oil by defendant to the refinery, the amount of said commission was necessarily dependent upon the amount of oil sold and the price. The contract between defendant and the refinery did not provide for the taking by the refinery of any definite amount of oil. It provided only that the refinery would purchase from defendant not less than a certain fixed minimum of oil and that the price was to be the same as that fixed by certain major oil companies on the respective dates of the sales in certain counties. Plaintiff alleged appellant sold to the refinery "3947.-46 barrels of oil for $2709.68 in December, 1934." The day or days in December 1934, on which said amount of oil was sold were not alleged, and if shown by the testimony said fact is not pointed out in the briefs. Plaintiff further alleged the amount of oil and the price obtained therefor which was sold by defendant to the refinery from January to November, inclusive, 1935. Plaintiff alleged there was no agreement as to when the commissions would be paid, but it was contemplated by the parties when the contract was made that said oil should be sold and that plaintiff was not entitled to a commission, nor could the amount be determined until the oil was sold by defendant to the refinery under the terms of their contract, which obligated the refinery to buy oil for a period of 12 months from November 1, 1934, and therefore commissions became due and payable on the first day of December, 1935. Alternatively, it was alleged defendant had a reasonable time after the sale of oil in which to pay plaintiff his commissions, and that six months after December 1, 1935, was a reasonable time in which to pay such commissions; that plaintiff demanded payment of his commissions on August 27, 1936, and payment was then refused. Plaintiff further alleged, alternatively, that the commissions were due at the end of 12 months from the beginning of said sales, or within a reasonable time thereafter; that under the general custom and usage of the oil trade existing in that vicinity at the time of the contract the buyer was to pay the seller on the 15th day of each succeeding month for the oil bought during the preceding month, and that plaintiff's commission on oil sold in December, 1934, became due and payable on January 15, 1935, and so on, on the 15th day of each month until December 1935. Evidence was introduced as to such custom. Both parties introduced evidence relative to what was a reasonable commission for the sale of the oil.

■ The case appears to have been tried upon the theory that if plaintiff was entitled to pay for procuring the building of the refinery and the resulting sale of oil by defendant to the refinery, that plaintiff was entitled either to a 10% commission (if the jury found an express agreement to pay such commission, as first alleged by plaintiff), or a reasonable commission for the sale of oil (as alternatively alleged by plaintiff). It is obvious plaintiff could neither allege nor prove a cause of action for commission on the sale of oil by defendant to the refinery until the amount of oil and the price to be paid therefor were determined by events happening subsequent to the making of the contract for the sale of oil.

■ "The general rule is that a right of action accrues whenever facts come into existence which give rise to a cause of action." 1 Tex.Jur. 632.

In American Nat. Ins. Co. v. Hicks, Tex. Com.App., 35 S.W.2d 128, 131, 75 A.L.R. 623, Hicks disappeared from his home on July 6, 1921, and his whereabouts were thereafter unknown. Suit was instituted August 18, 1928, by his wife on an insurance policy. Soon after the disappearance of Hicks, his wife presented to the insurance company such proof of his death as could then be made. The insurance company ignored such notice and proof of death. After Hicks had been absent for a period of seven years his wife again applied to the insurance company for blanks upon which to make proof of death. The company then waived the making of the proofs and denied all liability on the policy. The insurance company contended that if Mrs. Hicks ever had a cause of action it accrued more than four years prior to the filing of the suit; that, in March, 1923, Mrs. Hicks filed a suit against the insurance company involving the same subject-matter, which suit was dismissed in 1926 because Mrs. Hicks failed to comply with a court order to file a cost bond or affidavit in lieu thereof; that in said suit Mrs. Hicks alleged her husband was accidentally killed on July 6, 1921, and that Mrs. Hicks was estopped to deny that her cause of action accrued on that date, or immediately thereafter. The insurance company further alleged that Mrs. Hicks in 1922 filed suit against another insurance company on a

policy covering the life of her husband, and in that suit alleged her husband met with accidental death in 1921; that said suit was tried in 1923 and resulted in a finding by the trial court that her husband died on July 6, 1921. Said cause was appealed and affirmed. On the trial of the suit filed August 18, 1928, the court found that Hicks died in July, 1921 and that all premiums due on the policy had been paid up to and including July, 1921. That his beneficiaries had within due time given proper notice of his death and furnished proof thereof to the defendant insurance company. These findings of fact were adopted by the court of civil appeals. The Supreme Court granted the application of the insurance company for a writ of error on an assignment which questioned the correctness of the conclusion of the court of civil appeals that Mrs. Hicks' cause of action was not barred by the statute of limitation of four years when she instituted her suit in 1928. That court held that if Art. 5541 were applicable, Mrs. Hicks' cause of action would not be barred until four years after the expiration of the seven year period relative to the presumption of death. The Supreme Court said it was the duty of Mrs. Hicks, within the time prescribed by the insurance policy, to furnish the company proof of the death of Mr. Hicks, "if, in fact, such proof was possible, by the use of reasonable means and due diligence." The court further said:

"Upon the other hand, if [Mrs. Hicks] could not possibly, by the use of reasonable means and due diligence, have procured the information necessary for her to have, in order to make due proof of the death of Archie Hicks, the law did not impose upon her, as a duty, the attempted doing of an impossible thing. According to the undisputed facts in this case, on this particular subject, until Archie Hicks had absented himself for seven years, successively, after July 6, 1921, the defendant in error, under the law, was without the means necessary for her to have in order to establish, as a fact, the death of Archie Hicks, and, being without such means, she could not, reasonably, have been expected to furnish the plaintiff in error with proof of the death of Archie Hicks, who was presumed to be alive until after the expiration of seven years from the date of his disappearance. Until the expiration of that date, under the undisputed facts bearing on this subject, the defendant in error did not have any cause of action which she could have maintained in the courts against the plaintiff in error, based on the insurance policy described in the petition. The right to maintain an action depends upon the existence of what is termed a cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by defendant. 1 C.J. p. 951, par. 46. We hold that, under the undisputed facts in this case, upon the theory that the provision of Article 5541 is applicable, the defendant in error did not have any cause of action which she could successfully maintain in the courts against the plaintiff in error until after seven years had elapsed from July 6, 1921. Therefore her cause of action was not barred by the statute of limitation of four years when this suit was filed."

In Sovereign Camp, W. O. W. v. Boden, 117 Tex. 229, 235, 1 S.W.2d 256, 258, 61 A. L.R. 682, the Supreme Court of Texas considered another "disappearance" case. The insured, Boden, disappeared June 24, 1915. The jury found that he died prior to September 1, 1915. Suit was filed on an insurance policy covering Boden's life on June 4, 1924. The Society contended limitation began to run at the time of Boden's death; that is, prior to September 1, 1915, and therefore the cause of action was barred when the suit was filed June 4, 1924. Mrs. Boden contended that since no proof of Boden's death was available until the expiration of seven years after his disappearance no cause of action accrued until the expiration of said seven-year period. The Supreme Court said:

"The rule of law, as clearly established by the overwhelming weight of authority, is that no cause of action accrues until proof of death can be made, and that, where the fact of death of the insured person is established by presumptions arising from his unexplained absence, a suit commenced within the stipulated limitation period after the date when the presumption of his death arose, is in time."

In Hartman v. Hartman, Tex.Civ.App., 109 S.W.2d 218, 220, Ethel and A. P. Hartman were divorced in 1916. In 1920, A. P. Hartman married Alma T. Hartman. In 1926, A. P. Hartman acquired, through the will of his mother, 594 acres of land. In 1927, he conveyed this land to Alma T. Hartman for the recited consideration of $5.00 and love and affection. Alma T. Hartman promptly recorded this deed in the county where the land was situated. In 1932 Ethel Hartman obtained a judgment

against her former husband for $1,500, for money expended by her in the support of their children. In 1935, the second wife, Alma T. Hartman, joined by her husband, sold certain mineral interests in said tract of land and deposited the money thereby acquired in a bank in the name of the second wife, Alma T. Hartman. Thereafter, the first wife, Ethel, sued out a writ of garnishment based upon her said judgment of 1932, seeking to subject said money to the payment of her judgment against A. P. Hartman. Alma Hartman claimed the funds as her separate property. Ethel Hartman alleged the conveyance of the land to the second wife was void because it was made for the purpose of defrauding creditors, and that as to her the title still remained in A. P. Hartman, and the proceeds from such sale were subject to the payment of her judgment. Alma T. Hartman in response pleaded as against said claim of Ethel Hartman the four-year statute of limitation, and that she had acquired good title to said land under the three and five year statutes of limitation, prior to issuance of the writ of garnishment. Judgment was rendered in favor of Ethel Hartman subjecting said funds to the payment of her judgment against A. P. Hartman, from which judgment Alma T. and A. P. Hartman appealed. The court of civil appeals assumed that the conveyance by Hartman to his second wife, Alma T., was for the purpose of defrauding his creditors and particularly to avoid his obligation to support and educate his minor children by his first wife. It held that even as against future creditors his conveyance was fraudulent. With reference to the second wife's plea of limitation the court of civil appeals said:

"It is urged by appellee that limitation should not begin to run against her until A. P. Hartman's debt to her had matured and been reduced to judgment, because until that time she could have no means by which to enforce collection against the lands fraudulently conveyed. However this may be, even as against debts in her favor due to mature in the future, she had full knowledge of the fraud as early as 1927, but took no steps to set aside the fraudulent conveyance. Clearly, she could have done so by proper suit timely brought even as to future indebtedness. But to hold that, as to future unaccrued indebtedness, a limitation title in such grantee as against such creditors, could not ripen until five years after such future debts might mature,

would be in effect to suspend the five-year limitation statute in such cases; or at least to judicially create an exception to the statute not contained in it."

The Supreme Court reversed the judgment of the Court of Civil Appeals, and, with reference to the subject matter of the above quotation, said:

"Ethel Boyd Hartman filed her suit in the district court of Williamson County against A. P. Hartman on the second day of October, 1931. This suit was to recover money which had been expended by her for the maintenance, support and education of the minor children of herself and A. P. Hartman. That she had a right to file suit against A. P. Hartman before such time does not appear in the evidence, and under the record we must assume, in support of the judgment of the trial court, that she timely filed her suit. It cannot be said that Ethel Boyd Hartman had a right to attack the fraudulent deed before her cause of action against A. P. Hartman had accrued. When her cause of action against A. P. Hartman accrued she then for the first time had a right to pursue her remedies against the property fraudulently conveyed, that is, to attack the fraudulent deed or to reach the property through some species of execution." Hartman v. Hartman, 135 Tex. 596, 138 S.W.2d 802, 803.

The court further quoted from the opinion of Justice Critz in Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929, as follows: "'It seems to be the settled law of this state that limitation does not begin to run until the right or cause of action accrues. The right or cause of action does not exist until facts exist which authorize the person asserting the claim to seek relief in a court of competent jurisdiction from the person due to make reparation. It involves both the existence of the right and facts sufficient to constitute a cause of action.'"

In Port Arthur Rice Milling Company v. Beaumont Rice Mills, 105 Tex. 514, 520, 143 S.W. 926, 928, 148 S.W. 283, 150 S.W. 884, 152 S.W. 629, the Supreme Court said:

"In determining this issue, it is necessary to first ascertain what plaintiff's cause of action was as sued upon, and when such cause of action accrued to it. The learned judge of the Court of Civil Appeals seems to have been of opinion that, as soon as the rice crop in dispute was appropriated by defendants with

plaintiff's knowledge, plaintiff's cause of action for conversion accrued, and limitation began to run from that date. This position is correct, generally speaking, when not attended with the existence of any material circumstances or facts that would deny the complainant the right to maintain his cause of action in addition to the right to institute suit upon it. An error in this case seems to have arisen out of a want of a full and accurate conception of what a cause of action really imports in its legal sense. Before it can be said that a cause of action exists in a legal sense, there must be such a mature right as may be declared upon and maintained, subject only to such valid defenses by which it may be defeated. In 25 Cyc. 1065, the rule is laid down as follows: ' "The accrual of the cause of action" means the right to institute and maintain a suit; and whenever one person may sue another a cause of action has accrued, and the statute begins to run.' Again, in 25 Cyc. 1065, it is said: 'The statute of limitation begins to run from the time when a complete cause of action accrued—that is, when a suit may be maintained—and not until that time.' "

■ In A. H. Belo Corp. v. Blanton, 133 Tex. 391, 396, 129 S.W.2d 619, 621, our Supreme Court, in an opinion by Justice Sharp, said: "A cause of action has been defined 'as a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief.' "

■ In Stanley v. Schwalby, 85 Tex. 348, 353, 19 S.W. 264, 266, the Supreme Court, in an opinion by Chief Justice Stayton, said: "Limitation runs upon the right or cause of action accruing, and not before; and this does not exist unless facts exist which authorize the person asserting claim to ask relief from some court of justice against the person who ought to make reparation. It involves the existence of the right to sue, as well as of facts deemed sufficient in a general sense to constitute a cause of action * * *."

Also, see Cobb v. First Nat. Bank, 91 Tex. 226, 42 S.W. 770; Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 462, 61 S.W. 707; Deaton v. Rush, 113 Tex. 176, 194, 252 S.W. 1025.

A broker cannot recover commissions without proof of facts showing the amount of commissions he is entitled to. Wiley v. Smith, Tex.Civ.App., 55 S.W.2d 879, 881;

Blackwood v. Starkey, Tex.Civ.App. 24 S.W.2d 1108.

In Federal Reserve Bank v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 286, 117 A.L.R. 1160, Judge Hutcheson said: "It is of the essence of these statutes that time begins to run under them as to causes of action only after the right to prosecute them to a successful conclusion has fully accrued."

In Humble O. & R. Co. v. Andrews, Tex. Civ.App., 285 S.W. 894, 896, writ refused, the court said: "No cause of action for damages is complete, and does not accrue to an attaching creditor against one converting a part of the attached property or depleting the value thereof until a sale of the part remaining has shown that the creditor has not full satisfaction of his judgment."

See, also, Southwestern Lumber Co. v. Evans, Tex.Civ.App., 275 S.W. 1078, 1083; Robertson v. Warren, 45 Tex.Civ.App. 584, 100 S.W. 805; Leake v. City of Cleburne, Tex.Civ.App., 36 S.W. 97; American Exchange Nat. Bank v. Keeley, Tex.Civ.App., 39 S.W.2d 929, 935; Saunders v. Montgomery, Tex.Civ.App., 134 S.W. 775, writ refused; Stevens' Ex'rs v. Lee, 70 Tex. 279, 8 S.W. 40; Canadian Oil & Gas Co. v. Webb, Tex.Civ.App., 203 S.W. 135.

■ Appellee's commissions were not fixed, or determined, by the execution of the contract between appellant and the refinery. Facts determining the commission appellee was entitled to, if any, were not then in existence. The amount of oil to be sold and the price of the oil were facts subsequently to be determined by the acts of major oil companies in posting the price of oil and the decision of the refinery as to the amount of oil it would take. Some oil was sold in December, 1934; the day in December when it was sold is not shown. If the sale was on December 31st it was within the 2-year period provided by Art. 5526, subd. 4. Smith v. Dickey, 74 Tex. 61, 11 S.W. 1049. No breach of the contract is conclusively shown prior to appellee's demand for payment, and appellant's refusal to pay in August, 1936.

■■ The burden was on appellant to establish its plea of limitation. Gay v. Crow, Tex.Civ.App., 111 S.W.2d 782, 783, writ dismissed. No such issue was submitted to the jury or requested by appellant. The trial court's judgment was against appellant's plea of limitation. It does not

conclusively appear that plaintiff's cause of action, or any part thereof, accrued more than two years prior to the service of citation in this case. Appellant's point No. 1 is overruled.

On October 19, 1936, plaintiff, Ernest H. Greene, had three lawsuits pending in the district courts of Taylor County against Condor Petroleum Company. In some of the cases Greene was joined by others as plaintiffs, and in all of the cases, except the commission suit, there were other defendants. The three cases are referred to in the record as (1) the Fisher County case, (2) the accounting case, and (3) the commission suit, which is this case brought by Greene against Condor Petroleum Company to recover commissions alleged to be due Greene by Condor by reason of the services of Greene in procuring the building of a refinery (on an oil and gas lease owned by Condor, Greene and others), and the resulting sale of oil (from said lease by Condor, as the operating manager of said lease) to said refinery.

On said date the Fisher County case was called for trial. Mr. Greene had previously come from San Antonio to Abilene for the purpose of disposing of said case with Hon. Hugh R. Robertson, one of his counsel. Mr. Robertson had long been the attorney and good friend of Mr. Greene. Mr. Greene admits he had previously discussed with his counsel a settlement of the Fisher County case and the accounting case. After the Fisher County case was called for trial, Mr. Robertson obtained a conference for the purpose of settling said three cases. At this conference it was agreed that the Fisher County case (in which Condor had filed a cross-action seeking $35,000 damages against Greene) together with defendant's cross-action would be then dismissed. It was further agreed that if the counsel and representative of Condor would go to Tulsa and have a conference with Mr. Darby, who was interested with Mr. Greene in the accounting suit, and make a bona fide effort to compromise the accounting case, then this commission suit would be dismissed. There is a dispute as to some of the details and as to exactly what was said as to some matters considered immaterial; for instance, it is disputed as to whether or not Mr. Robertson stated at the time that he might be going beyond his authority, but there is no dispute relative to said agreement to so compromise and settle said three lawsuits.

Condor pleaded said oral agreement to compromise and settle said three lawsuits, and that the defendants had complied therewith, as a defense to plaintiff's cause of action. Greene, among other things, answered that his counsel had no authority to agree to dismiss his commission suit. Greene alleged that on November 10, 1936, Mr. Robertson wrote a letter to counsel for defendant in which Mr. Robertson stated he had a letter from Mr. Darby advising that counsel for Condor and its president were to have a conference in November, and that he hoped it would result in a settlement of the accounting suit. He said that it would be recalled "I proposed to dismiss the case involving lands in Fisher County and that in the. event an agreement satisfactory to Mr. Darby was consummated, we would then dismiss the pending suit involving the right of Mr. Greene to compensation for securing the. building of the refinery. I, of course, believed that I was authorized to make this agreement but it appears there was some misunderstanding between me and Mr. Greene in regard to the above mentioned suit, because sometime after my return to San Antonio, I received a letter from him, as did Mr. Doss [meaning, Judge Doss, one of Greene's attorneys] advising that he had not authorized us to agree to a dismissal of the suit involving his right to commission on the refinery deal, and that is the way the matter stands at present. Naturally, this situation has caused me a considerable degree of embarrassment. I trust, however, that neither you nor Mr. Hall will permit this unfortunate misunderstanding between Mr. Greene and me to interfere in any way with your efforts to arrive at an understanding with Mr. Darby. Mr. Darby, of course, has no interest in the commission suit and knows nothing about it, and I still feel that if you reach an agreement with him in the main transaction, that the other will take care of itself."

In reply thereto, Hon. Ellis Douthit, of defense counsel, said, among other things, that so far as he was concerned, "* * * this will make no difference in meeting our conference with Mr. Darby." Mr. Robertson testified that about thirty minutes after he had made said agreement he saw Mr. Greene at the hotel and told him what the agreement was. He said Mr. Greene just looked at him and turned and walked out of the room and said nothing. On the same day the judgment of dismissal of the Fisher County case, including the cross-action, was

prepared, and it was approved by Greene's counsel, including Mr. Robertson. Mr. Greene and Mr. Robertson then traveled together in an automobile from Abilene to San Antonio and, according to Mr. Greene, had a very pleasant visit. If it should be so construed, Mr. Robertson's letter of November 10, 1936, to Mr. Douthit is the first and only notice to defendant that Greene was contending he had not authorized his attorneys to make the contract, insofar as it provided for a dismissal of Greene's suit for a commission.

The first step in carrying out the compromise of the three lawsuits was taken on October 19, when the judgment was entered dismissing the Fisher County suit. Mr. Greene's testimony is to the effect that Mr. Robertson did not tell him the commission case was to be dismissed, or that he did not so understand it. He testified he did understand that the Fisher County case was that day dismissed and that there was an agreement to go to Tulsa and make an effort to settle the accounting suit. Mr. Greene never did divulge when, nor from whom, he learned that the agreement contemplated a dismissal of his suit for commission, if Mr. Robertson did not so immediately advise him, as Mr. Robertson testified, and as the jury found, that is, before he left Abilene on the same day. It is undisputed that on November 18, Mr. Hall, President of Condor, and one of its counsel, Mr. Douthit, had a conference at Tulsa with Mr. Darby, and others, including Greene, that resulted in a compromise and settlement of the accounting case, in which a change was made in the contract relative to the operation of the leases owned jointly by the parties, and that both Mr. Darby and Mr. Greene were satisfied with the concessions there made and agreed to the dismissal of that case.

Mr. Greene has never, according to his own testimony, offered to set aside the judgment dismissing the cross-action in the Fisher County case, nor give up any benefit or advantage obtained by the compromise and settlement of the Fisher County case or the accounting case.

The jury found (special issue 12) that Mr. Greene did not authorize Mr. Robertson to make the compromise settlement of October 19, 1936; (special issue 13) that "Greene knew on October 19, 1936, before he left Abilene that his attorney had agreed to dismiss the commission suit"; and (special issue 14) that after Greene learned of his attorney's agreement to dismiss the commission suit, he notified defendant within in a reasonable time of his repudiation of said agreement. The jury evidently believed that Mr. Robertson immediately after the making of the compromise agreement advised Greene that the compromise contemplated dismissal of Greene's commission suit. Although, as found by the jury, he knew of the agreement to dismiss the commission suit, he permitted his counsel to approve the judgment dismissing the Fisher County case and permitted that judgment to be entered on October 19th, and permitted the term of court at which it was entered to adjourn on October 31, 1936, without offering to set aside said judgment or notifying Condor that he had not authorized his attorney to dismiss the commission suit. There is no evidence that Condor was informed that Mr. Greene was contending his attorney was not authorized to dismiss the commission suit until the receipt of the letter written by Mr. Robertson on November 10th. By their answer to special issue No. 14 (to the effect that after Mr. Greene learned of his attorney's agreement to dismiss the commission suit he notified Condor, within a reasonable time, of his repudiation thereof) the jury could only have meant, (because there was no testimony to any other effect), that the jury thought, although Greene knew of his lawyer's agreement to dismiss the commission suit on the very day it was made and before the judgment was entered and that term of court adjourned, and although Greene permitted that portion of the compromise agreement to be carried out and said judgment to become final, that, nevertheless, the notice thereafter imparted by Mr. Robertson's letter of November 10, 1936, was given within a reasonable time. We conclude, as a matter of law, under such circumstances, Mr. Greene did not notify defendant of his repudiation of said contract within a reasonable time. It was incumbent upon plaintiff to promptly repudiate and he cannot be permitted to knowingly take advantage of the benefits of that part of the contract dismissing a suit against him for $35,000 and later, when that judgment has become final, repudiate it, without offering to restore what he had received under his attorney's agreement. Furthermore, he attended the conference at Tulsa (contemplated by the compromise agreement) and there obtained a settlement

of the accounting suit satisfactory to him. It is true that at the time of the Tulsa conference and settlement of the accounting suit, defendant had received the letter from Mr. Robertson in which Robertson advised defendant that he had received a letter from Mr. Greene "advising that he had not authorized us to agree to a dismissal of the suit involving his right to commission * * *." If the notice imparted by said letter was notice to the defendants of a repudiation by Mr. Greene of his attorney's agreement with reference to the compromise and settlement of the three lawsuits, (and we will, for the present purposes, so construe it), nevertheless, since the contract had already been partially carried out, defendants were not required to accept said repudiation, but had the right to continue to carry out their part of the contract. 10 Tex.Jur. 450–456; 9 Tex.Jur. 337.

█ We conclude that the act of Greene, with knowledge of the agreement as made by his counsel on the very day of the agreement and while he was still in Abilene, in permitting his counsel to approve the judgment dismissing the Fisher County case, and permitting the judgment to be entered, the court to adjourn, and the judgment to become final, and not notifying defendants until after the adjournment of said term of court and until after November 10, 1936, of his repudiation of the contract, insofar as it provided for a dismissal of his commission suit, constituted a ratification of the contract in its entirety. He can not knowingly accept the benefits of his counsel's contract, as he did, without also assuming the burdens of that contract. Under the facts found by the jury and the undisputed evidence, Greene's attorney asked for a conference when the Fisher County case was called for trial; Greene did not then want to try that case; Mr. Robertson made a proposition calling for a judgment dismissing the Fisher County case, and Condor's cross-action, and proposed that if Condor would make a bona fide effort to settle the accounting case Greene would dismiss his commission suit. This proposition was accepted by Condor. Greene, before he left Abilene on the same day, knew of this proposed compromise and settlement of his three lawsuits. Notwithstanding this knowledge he permitted a judgment dismissing the Fisher County case and Condor's cross-action for $35,000 to be approved by his counsel, entered as the judgment of the court, rode from Abilene to San Antonio with his lawyer without raising any objection to the contract this attorney had made in his behalf; let that term of court adjourn and the judgment become final, and then by a letter to Mr. Robertson (not shown in the record) he caused Mr. Robertson to advise Condor's counsel that Greene was contending Mr. Robertson was not authorized to make the agreement, insofar as it called for a dismissal of the commission suit. Mr. Greene then appeared at Tulsa to participate in a conference (contemplated in the original compromise agreement) that resulted in a settlement of the accounting suit and changes in the operating agreement satisfactory to Greene. Greene clings to all the benefits thus derived, but repudiates that part of the agreement requiring a dismissal of this suit.

█ Under all the authorities a principal who, with knowledge of the material facts, retains the benefits of a contract made in his behalf by an unauthorized agent cannot repudiate that part of the contract which is unsatisfactory to him. Having knowledge of the facts and retaining the benefits, he is considered as having ratified the contract in its entirety, and is so bound. 2 C.J.S., Agency, § 49, p. 1097, and 1104; 5 Am.Jur. 320; Braxton v. Haney, Tex.Civ.App., 82 S.W.2d 984 writ refused; State Life Ins. Co. v. Duke, Tex.Civ.App., 69 S.W.2d 791, writ refused; Williams v. Nolan, 58 Tex. 708, 712; Nason v. Addison County Trust Co., 104 Vt. 183, 157 A. 821; Oklahoma Title Co. v. Burrus, 172 Okl. 94, 44 P.2d 852, 855; Republic of China v. Merchants' Fire Assur. Corp., 9 Cir., 49 F. 2d 862, 865; Ferinac v. Italian Importing Co., Iowa, 179 N.W. 823, 824; McGinley v. Maryland Cas. Co., 85 Mont. 1, 277 P. 414, 417, 72 A.L.R. 1; National Surety Co. v. Jackson County Bank, 4 Cir., 20 F.2d 644, 646; Waggoner v. Western Carolina Pub. Co., 190 N.C. 829, 130 S.E. 609; Kelley v. Isensee, 60 N.D. 149, 233 N.W. 245; Wm. Cameron & Co. v. Gibson, Tex.Civ. App., 278 S.W. 522, writ refused; Roller v. Wooldridge, 46 Tex. 485, 495; Ellis v. Simmons, 5 Cir., 11 F.2d 596; Armour Fertilizer Works v. Maddox, 168 Ga. 429, 148 S.E. 152; Wilkins v. Waldo Lumber Co., 130 Me. 5, 153 A. 191; Miller v. Chatsworth Sav. Bank, 203 Iowa 411, 212 N.W. 722; Maryland Cas. Co. v. Beebe, 10 Cir., 54 F.2d 743; Horst v. Lightfoot, 103 Tex. 643, 648, 132 S.W. 761; Scott v. Lott, Tex. Civ.App., 247 S.W. 685; New Amsterdam

722

Cas. Co. v. Harrington, Tex.Civ.App., 11 S.W.2d 533, 539; Murchison v. Davis, Tex. Civ.App., 4 S.W.2d 1016, 1018; Lynch Davidson & Co. v. Denman Lumber Co., Tex.Civ.App., 272 S.W. 803; Jason Weiler & Sons v. Haskell Nat. Bank, Tex.Civ.App., 13 S.W.2d 384; Grayburg Oil Co. v. Powell, 118 Tex. 354, 26 S.W.2d 333; Owen v. King, Tex.Civ.App., 84 S.W.2d 743, reversed on other grounds 130 Tex. 614, 111 S.W.2d 695, 114 A.L.R. 859; Texas P. C. & O. Co. v. Smith, Tex.Civ.App., 130 S.W. 2d 425. Also see State Life Ins. Co. v. Duke, Tex.Civ.App., 69 S.W.2d 791, writ refused; Dunlap v. Villareal, Tex.Civ.App., 91 S.W.2d 1124; Kreis v. Kreis, Tex.Civ. App., 57 S.W.2d 1107; 2 Tex.Jur. 487.

We conclude, therefore, that the court erred in submitting over defendant's objection question No. 14, and that, as a matter of law, plaintiff is bound by said agreement, which has been fully performed by defendant, and that plaintiff is not entitled to recover in this case.

The above conclusion renders unnecessary a discussion of the remaining assignments, which are overruled.

The judgment is reversed and judgment rendered for defendant.