## GREENE v. CONDOR PETROLEUM CO. et al.

### No. 1829.

Court of Civil Appeals of Texas. Eastland.

Sept. 16, 1938.

Rehearing Denied Nov. 18, 1938.

A. K. Doss, Cox & Hayden, and Kirby, King & Overshiner, all of Abilene, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

GRISSOM, Justice.

Ernest H. Greene sued Condor Petroleum Company et al. to recover a commission or compensation for services alleged to have been rendered by plaintiff to defendants in procuring the building of an oil refinery near leases owned by plaintiff and defendants and the sale of oil by the defendants and plaintiff to the refinery. Plaintiff alleged that he and the defendants were the joint owners of an oil and mineral leasehold estate in 2475.86 acres of land in Jones County, Texas; that plaintiff owned an undivided one-twelfth interest therein and plaintiff and defendants were "the joint sole owners of said property." He alleged that in 1932 the Condor Petroleum Company, R. G. Piper and F. A. Sansome, trustee, and plaintiff entered into a contract for the purpose of exploring, drilling and developing said property with a view of producing oil therefrom; that under the terms of the contract between said named parties the Condor Petroleum Company was made the operating manager for the joint owners with full power to control and manage the property and to make contracts and to do all things necessary for the production and marketing of oil on and from said properties. He alleged that the interests of the defendants who were not parties to said contract, whereby the Condor Petroleum Company was made the operating manager of the properties, were acquired subject to the terms thereof and they were bound thereby. Plaintiff further alleged that there was no pipe line or refinery near said properties on which fifteen producing oil wells were located and that plaintiff was employed by Condor Petroleum Company, acting for itself and the other defendants, to "procure an outlet or market for the oil produced from said leases." That plaintiff procured the building of a refinery near said property and caused the sale of oil produced from the property belonging to plaintiff and defendants on which he claimed a commission on oil sold to said refinery to the date of filing plaintiff's petition in the sum of $28,321.12. He alleged that the amount or rate of commission was not agreed upon and he sued for what he alleged to be a reasonable commission, or, in the alternative, for such amount as the court found to be just.

Plaintiff attached to his petition and made a part thereof the contract between Condor Petroleum Company and R. G. Piper, F. A. Sansome, trustee, and plaintiff. Said contract recited that Condor Petroleum Company owned certain oil and gas leases and had a drilling contract with the lessors of said land; that for a recited consideration Condor Petroleum Company had agreed to and did sell, assign and convey to Piper, Greene and Sansome, trustee, an undivided one half interest in and to the oil and gas mining leases therein described; that Greene, Piper and Sansome, trustee, each thereby acquired a one-third interest in the one half interest assigned by Condor Petroleum Company. The contract contained stipulations to the effect that in the event oil was found in paying quantities the expenses incident to the drilling of wells and the production of oil, etc., should be borne jointly by the parties to the contract in proportions equal to their respective interests in said leases. That upon the completion of the first well the Condor Petroleum Company should have exclusive charge, possession, control and supervision of all operations of every kind to be conducted on the said property and the handling and marketing of oil, etc. That Condor Petroleum Company should thereafter charge to the joint account of the parties to said contract in proportion to the interest of each all costs and expenses incurred in the operation of the premises, and an agreed charge for bookkeeping, accounting and office expenses of a certain amount per well per month; further, that upon final abandonment of the premises the equipment thereon might be divided in kind and each party receive his proportionate share thereof. The contract provided that Condor Petroleum Company should keep accurate records of all joint accounts showing expenses incurred and charges made and all credits and returns made and received, which records should be available at all reasonable times for examination and inspection by the parties to the contract, and that any exception to any statement of such expenses, etc., must be made to

the Condor Petroleum Company by the other parties to the contract within sixty days from the receipt of a statement, and if no exception was made within such time, then such statement should be conclusively presumed to be correct. Greene, Piper and Sansome, trustee, agreed to pay to Condor Petroleum Company their proportionate part of all costs and expenses incurred and charges made to the joint account by the Condor Petroleum Company in the operation of said leases upon demand. It was stipulated that any purchaser of oil from said leases should be instructed to pay the proceeds to the Condor Petroleum Company, who should account to the other parties to the contract, or their assigns; that Condor Petroleum Company might apply any income to which Greene, Piper and Sansome, trustee, might be entitled to any indebtedness owing by either of them to the operating manager of said leases, to-wit, Condor Petroleum Company. It provided that in case of disagreement as to any matter relating to the operations of the lease under the contract which could not be amicably settled the matter was to be submitted to arbitration in a certain manner and at a certain time, and that the decisions, of the arbitrators should be final. There was also attached to plaintiff's petition a contract between Condor Petroleum Company and a refining company for the sale of oil from said leases to the refining company.

The defendants Condor Petroleum Company, R. G. Piper and Tal Vez Oil Company answered by general demurrer and special exceptions. One of the special exceptions was "that plaintiff and defendants were engaged in a joint enterprise, a mining partnership, and there is no allegation that a final accounting has been had which would in any manner authorize a suit by plaintiff against those associated with him in the joint adventure, and he is in effect suing himself." The general demurrer and special exceptions were sustained, and plaintiff having declined to amend, the case was dismissed. From the judgment of dismissal plaintiff has appealed.

We are of the opinion that plaintiff's petition and the contract attached thereto between plaintiff Greene, defendants Piper and Condor Petroleum Company and Sansome, trustee, evidence a mining partnership. Munsey v. Mills & Garitty, 115 Tex. 469, 480, 283 S.W. 754; Wagner Supply Co. v. Bateman, 118 Tex. 498, 505, 18 S. W.2d 1052; Clayton v. Bridgeport Mach.

Co., Tex.Civ.App., 33 S.W.2d 787, 790, writ refused; 12 Tex.Law Review, 410.

■ . The general rule precluding suits between partners upon partnership claims or transactions prior to an accounting between the partners, and reasons for the rule, are stated in Corpus Juris, as follows: "An accounting and settlement between copartners is a condition precedent to an action by one against another upon partnership claims and transactions for the following principal reasons: (1) A dispute of this nature ordinarily involves the taking of a partnership account; for, until that is taken, it cannot be known but that plaintiff may be liable to refund even more than he claims in the particular suit. (2) In partnership transactions a partner does not as a rule become the creditor or the debtor of a copartner, but of the firm. (3) Such a suit would necessitate that the party complained of be both plaintiff and defendant. (4) One partner does not own or have a right to any specific portion of the partnership property." 47 C.J. p. 804, sec. 251.

■ Generally the rules with reference to ordinary partnerships are applicable to mining partnerships. 32 Tex.Jur. 217. The reasons for the existence of the quoted rule with reference to ordinary partnerships apply with like force in the instant case. We recognize the existence of exceptions to the rule, such as actions upon contracts separate and distinct from partnership dealings. We think such exception has no application to the instant suit, the petition disclosing that it is a suit upon "unliquidated matters resting in partnership dealings." Clamp v. Nolan, Tex.Civ.App., 300 S.W. 105, 106.

Summarizing, we think the petition discloses a partnership relation existing between plaintiff and defendants; that the partnership has not terminated; that there has been no accounting or settlement of partnership affairs; that the contract sued upon is not one separate and distinct from partnership affairs, bringing it within an exception to the general rule, but, to the contrary, is a suit by one partner against the other members of the partnership upon an unliquidated claim involving partnership affairs. The contract sued on effectuated the ultimate purpose of the partnership, to-wit, the sale of oil from the partnership leases. If the plaintiff should recover, under the terms of the written contract made a part of the petition, it

would become the duty of Condor Petroleum Company, as the operating manager of the partnership, to first pay the amount of the judgment to plaintiff and then call upon the other members of the partnership, including plaintiff, to contribute their proportionate share, or to pay and discharge plaintiff's judgment out of partnership assets then in its possession. In either event, the plaintiff would ·be required to pay to himself a portion of the judgment; Greene is in effect both plaintiff and defendant. Such suit, we think, in the absence of an accounting, may not be maintained and the court did not err in sustaining the general demurrer and exceptions, and upon plaintiff's refusal to amend dismissing the case. In support of the foregoing conclusions we call attention to the following authorities: Masterson v. Allen, Tex.Civ.App., 69 S.W.2d 539, 542, error refused; 47 C.J. 802, sec. 250; Worley v. Smith, 26 Tex.Civ.App. 270, 63 S.W. 903, 904; Lockhart v. Lytle, 47 Tex. 452; Merriwether v. Hardeman, 51 Tex. 436; Hardee v. Adams Oil Ass'n, Tex.Civ. App., 254 S.W. 602, 605; Snyder v. Slaughter, Tex.Civ.App., 208 S.W. 974.

The judgment is affirmed.

### On Rehearing.

**PER CURIAM.**

Further consideration of this case, upon the motion for rehearing, convinces us that we were in error in our conclusion that Condor Petroleum Company, E. H. Greene, R. G. Piper and F. A. Sansome, Trustee, were shown, by the allegations of plaintiff's petition, to constitute a mining .partnership. They did constitute a mining partnership, according to the clear purport of plaintiff's pleadings, considered without reference to the contract set out as an exhibit to said pleading. In said pleading, not only joint ownership of the leases was alleged and the purpose of the contract as being for "the exploration, drilling and development" of the leases; but it was further alleged that by such contract the other parties had "entrusted to Condor Petroleum Company *as the operating manager for the joint owners,* and said Condor Petroleum Company was *given* full power to control and manage said property" etc. (Italics ours.) It was alleged that Condor Petroleum Company, in employing plaintiff was "acting for defendants." It is repeated more than once that in employing plaintiff, said Condor Petroleum Company was "acting for itself and for the other defendants herein." Such was the basis upon which judgment was sought against said other defendants, as well as Condor Petroleum Company. If in truth, as thus alleged, the other defendants did *entrust* such matters to Condor Petroleum Company *and under powers granted from the others,* it acted for all of them, as alleged, then there was certainly joint operation, as well as joint ownership; and a mining partnership was shown. Because one or more joint owners operated through another joint owner as agent or representative does not make the operation any the less a joint operation by all.

But the contract, referred to in said pleading and set out as an Exhibit thereto, shows that although Condor Petroleum Company did have the unrestricted power of management, control and operation of the leases, as stated in the contract, including the marketing of the product therefrom, it derived none of such rights or powers from said other defendants. It posssessed all such rights and powers by virtue alone of being the lessee in the leases and by virtue of the terms of the leases being rights and powers derived from the lessors. The legal effect of its contract with plaintiff and the other defendants was to show that it never parted with or suffered any impairment or diminution of, such rights and powers in making the assignment of the interests constituting the subject matter of said contract. The other defendants in no true sense could *entrust* it with rights or confer rights or powers that they never had, and never acquired. The expression of mutual agreement, in the contract, that Condor Petroleum Company "its successors, assigns, or legal representatives shall have and is hereby given and granted by second party, its successors, assigns or legal representatives, exclusive charge, possession, control and supervision of all operations of every kind to be conducted on the said property for the development, production, treating, handling and marketing of oil, gas and other minerals therefrom as well as the payment of rentals, royalties, taxes and other charges which may arise and become due," etc., when read in the light of the undeniable fact that it at the time already possessed all such rights and powers and the clearly evinced purpose of the contract that it was not to part with any such rights or powers necessarily means no more than that the other parties recog-

nized or assented to the retention of all such powers by Condor Petroleum Company and took their several interests wholly subject thereto. Among the rights and powers so retained by Condor Petroleum Company and subject to the continued existence of same in it, its successors, and assigns, was "the development of said properties * * * entirely at the discretion of first party." Another was that First Party "shall not be obligated in any manner herein to drill or operate the same, nor * * * be liable in any manner for failure to drill or operate any well or wells on said property." In short, the contract clearly shows that only working interests in the lease were assigned by the contract to plaintiff and said other defendants subject to every right and power of Condor Petroleum Company as though, in reference to the management and operation of the leases, it were and remained the sole owner of the leases. Said other defendants by the contract not only acquired no right to join in the operation of the leases, but expressly acknowledged that Condor Petroleum Company had the exclusive right to do so.

■■ It is believed to be the rule that in passing upon the legal sufficiency of a pleading which refers to an attached exhibit the effect of the pleading is to be limited by and to the terms of the exhibit. So limited, plaintiff's pleading in this case, must, we think, be held not to show a mining partnership existing between Condor Petroleum Company on the one hand, and the plaintiff and said other defendants on the other.

■ It remains to consider whether in the absence of such relation between the parties, the petition was sufficient to state a cause of action by the test of a general demurrer. This question may even still further be narrowed to a consideration of whether such pleading alleged a cause of action in favor of plaintiff against Condor Petroleum Company, because it is certain, we think, that it did not allege a cause of action against the other defendants. If, however, it was sufficient as to Condor Petroleum Company, then it was error for the court to sustain a general demurrer, without limiting such action to said other defendants.

It is deemed necessary to consider the nature and terms of the contract which forms the basis of the suit as same are shown by the allegations, taking care to distinguish such allegations from those showing what was done under or as a result of such alleged contract.

The only allegations relating to the nature and terms of the contract were "* * * Condor Petroleum Company * * * employed plaintiff to procure an outlet or market for the oil produced from said leases and the plaintiff agreed to use his best efforts to bring about the building of a refinery near said properties * * * there was an express agreement between him and Condor Petroleum Company * * * for the employment of the plaintiff in said capacity to procure the building of said refinery, and the resulting sale of oil to it from the property of the defendants; but plaintiff alleges that there was no express agreement between said parties as to the amount of commission or compensation which he was to receive for his said services."

With only these averments as to the provisions of the contract there is manifestly considerable uncertainty as to what rights the contract created or what duties it imposed. In one place, plaintiff alleged he was employed "to procure an outlet or market for the oil produced from said leases", but in the same connection he averred his own undertaking to be that "plaintiff agreed to use his best efforts to bring about the building of a refinery near said properties." The question naturally suggests itself: Suppose plaintiff had fully performed this provision of the contract by using "his best efforts to bring about the building of a refinery" but such efforts had failed, what commission or compensation, if any, would he have been entitled to under the alleged contract? Did the contract provide that the obligation of Condor Petroleum Company to compensate plaintiff in any amount was wholly contingent upon the success of his best efforts? Upon that point the pleadings do not speak. These questions are further complicated by plaintiff's further allegation that "there was an express agreement between him and Condor Petroleum Company for the employment of the plaintiff [evidently referring to the same "employment" before mentioned] to procure the building of said refinery." Was the obligation imposed upon plaintiff by the contract the obligation "to use his best efforts to bring about the building of a refinery" as alleged in one place, or was it "to procure the building of said refinery" as alleged in anoth-

er place? There would appear to be a material difference between the two obligations. Complete performance of one obligation could be just as complete non performance of the other, as a moment's reflection will show.

Employing familiar principles of construction, we think the allegation that plaintiff's employment was "to procure an outlet or market for the oil" must be regarded as general and therefore controlled by the more specific allegation that he was to use his best efforts to bring about the building of a refinery near said properties", or as otherwise also alleged, "to procure the building of such refinery." If so, the subject matter of the contract was not the employment of plaintiff to procure a sale of, or a market for, the oil produced from said properties, but it only had to do with the location of the refinery. The correctness of this conclusion is fortified by the clause following the portion of the contract last quoted and reading thus: "and the resulting sale of oil to it from the property of the defendants." This, although ambiguously stated as a term of the contract shows when taken in connection with what precedes it, that it was merely a statement of the contemplated result of the contract of employment. We, therefore, conclude that the subject matter of the employment, as the same is made known from the allegations of the petition, was either (1) "to procure the building of said refinery" or (2) "to use his best efforts to bring about the building of the refinery." In either case, it was no part of his employment to procure the sale of, or market for, the oil, but as already said that was only a contemplated result of the location and building of the refinery.

■ As a matter of law we think plaintiff was not entitled to recover a commission, or compensation in the nature of a commission, in any amount, for services in procuring the sale of oil or a market for the oil. The amount or value of oil that might, in the course of years, be sold to the refinery, once it was located in the vicinity of the leases, quite obviously could bear no relation to the value of the services of plaintiff in procuring the location and building of the refinery.

The pleadings claimed $28,321.18 as commissions, or compensation, upon the theory that plaintiff was due that amount for his services, in procuring the sale of the oil, or in providing a market therefor. That amount was claimed although it was shown that the ownership of the refinery had changed. Our conclusion that no part of this was recoverable, poses the further question: What amount, if anything, did the allegations of plaintiff's petition show he was entitled to recover for his services in procuring the location and building of the refinery? The nature and extent of such services were alleged. It was also alleged as follows: " * * * plaintiff further alleges that if he is mistaken as to his allegation as to what his reasonable commission or compensation would be for the services performed by him, then he says in this connection that he has actually earned to date, the sum of $28,321.18 and he sues for said sum on a quantum meruit basis." Earned how, and for what? He had already alleged that he had earned that identical amount by way of commissions or compensation based upon the amount of oil sold and upon the theory that the services rendered under the contract included the procurement of a market for, or the sale of, said oil. The pleading, as we have concluded, showing no right to recover any such sum there is left no allegation to show an amount recoverable, which at the same time would show the jurisdiction of the court to entertain suit. Not only was there "no express agreement between said parties as to the amount of commission or compensation which he was to receive for his services" as plaintiff alleged, but there are no facts alleged from which can be implied a promise to pay any amount within the jurisdiction of the court for his services in regard to the location of the refinery. No amount for the recoverable service is stated. No facts showing the value of such services, exclusive of those for which he was not entitled to recover anything are alleged. Our conclusion is that said pleading by its allegations showed no right to recover any sum which can be said to be within the jurisdiction of the court. Hence, we conclude that notwithstanding the error in our former conclusions, the petition was nevertheless subject to general demurrer as held, and that the motion for rehearing should be overruled, which is accordingly so ordered.