E. H. GREENE V. CONDOR PETROLEUM COMPANY ET AL.

No. 7522. Decided June 5, 1940.
Rehearing overruled July 3, 1940.
(140 S. W., 2d Series, 844.)

*Kirby, King & Overshiner, A. K. Doss* and *Cox & Hayden,* all of Abilene, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that plaintiff's petition was subject to a general demurrer in his action to recover commissions for services rendered in compliance with his contract, as he was entitled to place his bona fide construction on the contract sued on, and to allege his cause of action according to such construction; and in the absence of a plea by defendant of fraudulent allegations for the purpose of conferring jurisdiction, plaintiff's allegations as to amount of damages asked for are conclusive as to the jurisdiction. The jurisdiction is in no wise affected by the amount of his ultimate recovery. 7 Texas Jur. 519-520; Jones v. Bledsoe, 293 S. W. 204; Stapper v. Wolter, 85 S. W. 850.

*Wagstaff, Harwell, Wagstaff & Douthit,* of Abilene, for defendants in error.

Plaintiff's petition does not allege a cause of action over which the district court would have jurisdiction. Plaintiff's suit is one against his partners for a brokerage commission while the partnership continues and amounts to a suit against himself, and does allege an accounting or settlement of partnership affairs. Beham v. Ghio, 75 Texas 87, 12 S. W. 996; Wilson v. Hunt, 270 S. W. 263; Wagner Supply Co. v. Bateman, 118 Texas 498, 18 S. W. (2d) 1052.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit was filed by E. H. Greene, plaintiff in error here, against Condor Petroleum Company and others, for compensation for services alleged to have been rendered by him pursuant to an express employment by the company acting for itself and the other defendants.

The trial court sustained a general demurrer to the petition. Plaintiff elected to stand upon the allegations of his petition and the suit was dismissed. The Eastland Court of Civil Appeals affirmed the judgment of the trial court. 121 S. W. (2d) 381.

Writ of error was granted upon an assignment alleging error against the holding that plaintiff's amended petition is insufficient as against a general demurrer, and further alleging the decision of the Court of Civil Appeals is in conflict with, among other cases, Colbert v. Dallas Joint Stock Land Bank 129 Texas 235, 102 S. W. (2d) 1031, which reversed the judgment of the Eastland Court in that case (98 S. W. (2d) 239).

The sole question presented is whether the facts alleged by plaintiff constitute a cause of action.

Plaintiff alleges that on August 17, 1932, Condor Petroleum Company, as first party, entered into a contract with second party (plaintiff, R. G. Piper and F. A. Sansome, Trustee), whereby the first party conveyed to the second party an undivided one-half interest in an oil and gas lease containing 2475.86 acres; that each of the three individuals composing the second party acquired by the terms of the contract a one-third interest in the one-half interest in the lease conveyed to them; that plaintiff owns an undivided one-twelfth interest in the lease and that he and the other defendants are "the joint sole owners of the property."

A copy of the contract referred to is attached to and made a part of plaintiff's petition. Its material provisions will therefore be briefly stated before proceeding with a statement of the further allegations of the petition.

The first paragraph of the contract provides that in consideration of the premises and mutual covenants (not necessary to be stated), of the parties, the first party (Condor Petroleum Company) assigns and conveys an undivided one-half interest in the lease unto second party, (plaintiff, Piper and Sansome) its successors and assigns, reciting in this connection that each of the three individuals known as second party "has a one-third interest in the one-half interest herein assigned." It is pointed out in connection with this recitation that defendants, other than those who were parties to the contract, acquired such rights and interests as they may have subsequent to the execution of the contract and subject to its terms.

Paragraph II of the contract recites that the company agrees at its own cost and expense to drill an oil well on the lease to the prescribed depth under certain terms and conditions not necessary to be stated here further than to point out that it provides that in the event the first test well is completed, either as a dry hole or as a non commercial producer, and the company desires to drill a second test before forfeiting the block of leases

in question, the second party agrees to advance one-half of the cost thereof upon the conditions and with the result stated in the contract.

Paragraph III provides that after completion by first party "of the first well, and/or the second well, as contemplated by the agreement, it is mutually agreed that first party, its successors, assigns or legal representatives, shall have and are hereby given and granted by second party, its successors, assigns, or legal representatives, exclusive charge, possession, control and supervision of all operations of every kind to be conducted on the said property for the development, production, treating, handling and marketing of oil, gas and other minerals therefrom, as well as the payment of rentals, royalties, taxes and other charges which may arise and become due, * * *." It is further stipulated in this connection that first party has the right to delegate and assign all rights given to it under the terms of the contract and that the development of the properties "shall be entirely at the discretion of first party * * *."

The remaining provisions of the contract as set out in paragraphs IV, V, VI, VII, VIII, IX and X thereof have to do with the respective obligations of the parties in the event commercial production is developed in either the first or second test. Their provisions are summarized by the Court of Civil Appeals in its opinion upon original hearing, reference to which is made in the interest of brevity.

Resuming a statement of the allegations of the petition attention is directed to the general allegation (paragraph 4) that in the early part of 1933 the company brought in the first well on the properties and that subsequently other wells had been brought in periodically "until there are now fifteen (15) producing wells on the said land and the leasehold interests of the joint owners have become and are quite valuable."

Paragraph V alleges that as producing wells were brought in the company was greatly handicapped in the development of the properties and in obtaining revenues from the oil produced thereon, because there was no conveniently located pipe line company or refinery to which it could sell the oil from the wells on the properties thus jointly owned; that in the early part of 1934 the company, *"acting for defendants, employed plaintiff to procure an outlet or market for the oil produced from said leases,* and the plaintiff agreed *to use his best efforts to bring about the building of a refinery near said properties"*; that pursuant to the agreement plaintiff, through his efforts and in conjunction with those of the president of the company,

brought about the execution of contract between the company and Phoenix Refining Company, Inc., "whereby the latter agreed *to build a refinery near said properties, and to purchase the oil to be produced and delivered therefrom"* (Italics ours) ; that by December 1, 1934, the refinery was completed and began purchasing oil from the company.

Paragraph VI alleges that from December, 1934, to November, inclusive, 1935, the refining company purchased from the company 154,741.37 barrels of oil produced from said properties, and was paid therefor by it the sum of $145,571.23; that during the month of November, 1935, the Phoenix Refining Company sold its refinery to Onyx Refining Company and that the latter has continued the purchase of oil produced by the company every month and has purchased a total of 250,000 barrels of said oil, for which it paid $275,000.00.

Paragraphs 7 and 8 of the petition read:

"That this plaintiff was the procuring cause of the building of said refinery and the resulting purchase by said refinery of the oils referred to above, and that in procuring the construction of said refinery, and the sale of said oil by defendants * * * plaintiff was acting under and by virtue of his employment by the defendant, Condor Petroleum Company, acting for itself, and for the other defendants herein; and that thereby the defendants became liable and obligated to pay to this plaintiff a reasonable sum as a commission or compensation for his services * * *."

—8—

"Defendant alleges that *there was an express agreement between him and Condor Petroleum Company, acting for itself, and the other defendants, for the employment of the plaintiff in said capacity, to procure the building of said refinery, and the resulting sale of oil to it from the property of the defendants;* but plaintiff alleges that there was no express agreement between said parties as to the amount of commission or compensation which he was to receive for his said services. He alleges in this connection that the usual and customary commission for such services, and a reasonable commission for same in the vicinity, is the sum of 10% of the sale of the amount of oil actually purchased by Phoenix Refining Company, to wit, 154,741 barrels, and that his commission therefor would be 10% of the amount received for said oil so purchased by said Phoenix Refining Company, or, to wit, the sum of $14,557.12. If he is mistaken in this connection as to 10% being a reasonable commission, then he alleges in the alternative that 5% would

have been a reasonable commission for said services in the sale and delivery of such oil as was purchased by the Phoenix Refining Company. He further alleges that a reasonable commission for the amount of oil purchased by the Onyx Refining Company after it took over said refinery would be 5% of the $275,000.00 which the Onyx Refining Company has paid to defendants for such oils as it purchased, or the additional sum of $13,750.00, and that the plaintiff has, therefore, earned in commissions on the sale of oils to date by the defendants to said refinery, the total sum of $28,321.12, for which he here sues. * * * *In this connection the plaintiff further alleges that if he is mistaken as to his allegation as to what a reasonable commission or compensation would be for the services performed by him, then he says in this connection, that he has actually earned to date the sum of $28,321.12, and he sues for said sum on a quantum meruit basis, * * *.*" (Italics ours.)

The Court of Civil Appeals in its opinion upon original hearing upheld the action of the trial court in sustaining the general demurrer, on the theory that plaintiff's suit is one for contribution of expenditures incurred by a partner for the use of the partnership without first having a settlement of the partnership accounts, citing as authority for its holding such cases as Lockhart v. Lytle, 47 Texas 452; Merriwether v. Hardeman, 51 Texas 436, and Masterson v. Allen (wr. ref.), 69 S. W. (2d) 539.

◼ While agreeing with the rule applied in the cases cited we are unable to construe the averments of plaintiff's petition as constituting an action for contribution of expenditures incurred by one partner for the use of the partnership.

According to the allegations of the petition Condor Petroleum Company was granted, under the terms of the contract referred to, exclusive charge of the development and marketing of the oil to be produced from the properties. The company having been granted the right to exercise this power on behalf of the joint ownership created by the contract, neither the company nor any of the other defendants are in position to complain, in the light of plaintiff's allegations, of the company's action in employing him to render a personal service which had for its purpose the procuring of a market for defendant's oil under the facts alleged.

The employment, so far as the allegations of the petition are concerned, was for the rendition by plaintiff of a personal service, the specific purpose of which was the development of the lease and the marketing of the oil to be produced from the

properties. It was not a partnership operation, the carrying out of which devolved upon plaintiff by virtue of his relationship in connection with the properties. No duty rested upon him as a partner to render this service, the development of the properties and marketing of the oil having been specifically entrusted to Condor Petroleum Company by the terms, and upon the conditions stated, in the contract. We are cited to no authority holding that a joint owner, occupying a position similar to plaintiff's cannot accept employment from the other owners holding jointly with him, to render a personal service for the benefit of their joint holdings; and we know of no rule of law inhibiting such employment.

In a per curiam opinion of the Court of Civil Appeals, upon rehearing, the view is expressed that the contract above referred to showed that, although Condor Petroleum Company did have the unrestricted power, control and management of the lease, including the marketing of the production therefrom, it derived none of such rights or powers from the other defendants; that the other defendants "in no true sense" could entrust the company with rights which they did not have and did not acquire. It is further stated in this connection that the recitations that the company is granted by second party "exclusive charge, possession, control and supervision of all operations of every kind to be conducted on said property * * *," when read in the light of the fact that the company at that time already possessed such rights and powers, means that the company was not to part with any such rights or powers and that it necessarily means no more than that the other parties recognized, or assented to the retention of all such powers by the company and took their several interests wholly subject thereto.

■ The strained construction thus sought to be placed on the contract overlooks the fact that a new relationship with respect to the properties and their ownership was created by the contract, and that it is with respect to such relationship that the power and authority in question was entrusted to the company. Whether the company, under the new relationship, retained, or acquired, the power and authority to develop the properties for the joint benefit of the owners, is immaterial. The fact remains that the sole power, and the consequent duty, rested upon the company to develop the properties and market the oil under the limitations, and upon the conditions, prescribed in the contract. No reason is apparent why the owners are not bound by the contract to the extent it is within such limitations and conditions, notwithstanding the service is to be rendered

by one of the owners of the properties. Looking through form to substance the following statement of Chief Justice Phillips in Sergeant v. Goldsmith, 110 Texas 482, 221 S. W. 259, 10 A. L. R. 742, is applicable: "As to third persons they (members of the association) are liable as other principals are liable who deal with third persons through any form of agency; *as between themselves they are liable as their contracts with each other make them liable;* * * *." (Italics ours).

In view of the conclusion that nothing is disclosed in the allegations of plaintiff's petition which would prohibit the company from employing plaintiff to render the personal service contracted for, it is not necessary prior to a trial on the merits, to determine whether the allegations of the petition are such as to show that a mining partnership exists between the joint owners of the lease. There is no question, at least at this stage of the proceedings, involving claims of general creditors.

It is stated in the opinion upon rehearing also that, in view of the allegations of paragraph 5 that "plaintiff agreed to use his best efforts to bring about the building of a refinery * * *," and those contained in paragraph 8, supra, the pleadings do not speak upon the question of whether the contract provides that the obligation of the company to compensate plaintiff is "wholly contingent upon the success of his best efforts." The further allegation of paragraph 5 just referred to is that there was an express agreement between plaintiff and the company for his employment "to procure the building of said refinery *and the resulting sale of oil to it upon the property of the defendants."* (Italics ours).

The contract involved must be considered as a whole, and all of its provisions must be construed together in order to ascertain its meaning and effect. 10 Texas Jur. pp. 282-284.

■ In construing a pleading as against a general demurrer the language should be construed in favor of the pleader, indulging every reasonable intendment in his favor.

■ Having in mind the above stated rules applicable in the construction of contracts and pleadings, respectively, rather than the test sought to be applied by the Court of Civil Appeals, the petition alleges a cause of action; to wit, substantially, that he was employed by the company on behalf of the owners to procure the building of a refinery, and, in addition to using "his best efforts," was "to procure the building of the refinery and the resulting sale of oil." The averments in question are not necessarily either contradictory or inconsistent, and are therefore not subject to a general demurrer. Colbert v. Dallas Joint

Stock Land Bank (Com. App.), 129 Texas 235, 102 S. W. (2d) 1031. In other words the respective allegations do not falsify themselves. They could probably have been rendered more definite and certain by amendment filed in response to a proper ruling upon special exception, but that procedure was not followed.

The Court of Civil Appeals says in concluding its opinion upon rehearing that the petition "by its allegations showed no right to recover any sum which can be said to be within the jurisdiction of the court."

This holding is erroneous, and is contrary to the holding in the Colbert case, supra, 129 Texas at page 239, par. 1, 102 S. W. (2d) at page 1033, par. (1-3).

The judgment of the Court of Civil Appeals affirming that of the trial court is reversed and the cause is remanded.

Opinion adopted by the Supreme Court June 5, 1940.

Rehearing overruled July 3, 1940.