### AMBERSON v. HORTON.

No. 12490.

Court of Civil Appeals of Texas. San Antonio.

Jan. 14, 1953.

On Motion for Rehearing Feb. 9, 1953.

Rehearing Denied March 11, 1953.

. Oliver & Peace, San Antonio, Sid L. Hardin, Edinburg, Edward W. Penshorn, San Antonio, for appellant.

Brewer, Matthews, Nowlin & Macfarlane, San Antonio, Ewers, Cox & Toothaker, McAllen, Clinton G. Brown, San Antonio, for appellee.

POPE, Justice.

Appellee, Jack Horton, sued appellant, Joe Amberson, for the recovery of one-half of the earnings from an alleged oral cattle partnership. A jury found that a partnership between the parties existed and that it earned a net profit of $110,930, one-half of which belonged to Horton. Appellant has appealed from the judgment of the court based on the jury findings.

The case presents several procedural points, some of which we shall not discuss. Appellant denied the partnership and says that appellee, in any event, failed in his proof to isolate partnership cattle from those owned by Amberson individually. Appellant also says that the trial court erred in overruling his special exception to

the petition insisting upon an accounting as a condition precedent to this suit, and that the trial court in submitting the issue inquiring about the net profits from the sale of the cattle, permitted the jury to take into consideration the value of certain cattle which were not sold by the partnership.

The jury found that Amberson and Horton were partners on a basis of equal participation in net earnings from the purchase and sale of three cattle herds, known as the Cameron cattle, the Bentsen cattle, and the Mississippi cattle. The evidence supports the fact of partnership and also shows what cattle were purchased. The proof showed that Amberson paid $158,000 for the cattle and that Horton worked, culled, shaped and shipped them. The Cameron cattle were bought in March of 1947, and included 265 grown cattle and 90 so-called free cattle, which were the unbranded increase of the grown cattle. These cattle were located in Starr County. The Bentsen cattle were bought in April of 1947, and they included 1100 grown cattle and something between 350 and 1100 free and unbranded cattle. Those cattle were also located in Starr County, but on a different ranch. There were 162 Mississippi cattle.

The evidence shows what cattle were sold. After the Cameron and Bentsen cattle were bought, Horton went to Starr County and spent five days each week gathering and handling the stock. Two hundred and seventy-five of the Bentsen cattle were resold at the site of the purchase; 470 head out of the Cameron and Bentsen herds were shipped to Hondo to a leased pasture, and 360 of them were later sold; 400 other cattle and some strays remained in the Bentsen pasture and Bentsen bought them back. Some of the cattle were shipped to Amberson's ranch in La Salle County; 1140 of the Cameron and Bentsen cattle were sent to the San Antonio market and sold through the Southwestern Commission Company, which company was another partnership arrangement between Amberson and Horton. Horton personally handled and tended to these shipments from the pasture to the market,

and he also handled the sales through the commission company at the market.

The Mississippi cattle were delivered to Amberson's La Salle County Ranch. One hundred and twenty-one of them were sold and 41 were left on the ranch. One other significant sale was made, and this was a disputed item, but one that the jury could determine. Horton testified that in 1948 he went to the La Salle County ranch to work the partnership cattle; that Amberson told him to cull off the old cattle and that he wanted to buy the rest of the cattle himself. Cattle that were then carrying the Cameron and Bentsen brands were branded with Amberson's personal brand. In accordance with Amberson's plan to buy the cattle, they were turned back into his pasture. Four hundred grown cattle and 150 young cows were so bought by Amberson at the then value, as testified to by Horton.

Those are the sales that disposed of the cattle about which the plaintiff was able to make his proof. The nature and the adequacy of that proof is brought into question by appellant.

All cattle were carried in Amberson's name, were sold in his name, and the proceeds from the sales were turned over to Amberson, since he paid for the cattle as well as the expenses. Horton received nothing for his work with the cattle, extending over a period of about two years.

■■ Appellant attacks Horton's proof of the sales as being without support in the evidence, and as being conjectural. In testing the proof, we shall discard all adverse evidence and give credit to all that is favorable to the successful party and indulge every legitimate conclusion that is favorable to him, since the jury found in his favor. 17 Tex.Jur. 910. It was necessary to prove the amount of gross revenue from the cattle sales and the amount of proper expenses deductible from that revenue. The proceeds from the sales of large herds to individuals is amply supported. The main problem arises in connection with sales made through the commission office in San Antonio. Of those sales we can eliminate any problem as to those shipments of both branded and un-

branded cattle out of the Cameron and Bentsen herds. Those cattle came from the pastures in Starr County where they were bought, and were sent direct to the San Antonio market, so they were never commingled with cattle belonging exclusively to Amberson. These were sufficiently and personally identified by Horton. Horton also accounted for the expense items on those shipments.

But the problem in the proof arises around those cattle that were pastured on Amberson's La Salle County Ranch before ultimate shipment to the San Antonio market. Those cattle were commingled with Amberson's individual herd which was in no way owned by the partnership. Amberson claimed that the shipments from La Salle County included both branded and unbranded cattle that belonged to him. We can eliminate the problem with reference to the unbranded cattle that were shipped to San Antonio, for the jury verdict settled a conflict in the evidence with reference to them. Amberson said that he had some unbranded cattle because he did not do his branding until August of 1948, which was after the date of the shipments. This evidence was met by Horton's direct denial and positive evidence that Amberson's cattle were branded in the spring of 1948, that "the calves were all branded, too," and that all the cattle he found that belonged to Amberson were branded; and that "the calves (were) still following the cows and they were carrying his brand." With this evidence, the jury could have considered all the unbranded cows that came from La Salle County as partnership cattle rather than Amberson cattle, which had been branded.

By this process of elimination, the only remaining cattle that must be separated were the branded cattle, which included some cattle bearing Amberson's brand, certain unidentified brands, and the Cameron-Bentsen brands. The Cameron-Bentsen brands were partnership cattle, and the cattle bearing unidentified and the J Spike brands were Amberson's. These cattle were shipped from Amberson's La Salle County ranch and sold together. From the sales tickets alone there is no way to determine whose cattle brought what price. To meet this problem, Horton called, as a witness, the Brand Inspector of the Southwest Cattle Raisers' Association, and his daily records were compared with the sales slips bearing the same date. The brand records showed how many cattle bore Amberson's J Spike brand and unidentified brands. We have not undertaken to exactly total those cattle, but this proof showed that about 246 cattle bearing the J Spike and unidentified brands were sold, and about 600 of the partnership branded cattle were sold in the shipments from the La Salle County Ranch. Horton, in the face of such proof, entirely withdrew his exhibits and claim for some of the sales, but some sales slips were not withdrawn though they included some of the Amberson cattle. To the extent that there was no proof as to what the Amberson cattle brought on the market and what the partnership cattle brought, there is no separation of the prices brought by the two groups of cattle. Different cattle brought different prices, and whether Amberson's or the partnership cattle brought a given price is not shown.

The proof shows the number of partnership cattle sold, and since that was proved we have no reason to believe that the jury included any of Amberson's cattle in arriving at the gross receipts. But the proof did not show which price the partnership cattle commanded.

We are of the opinion that the proof would support a claim by Horton for the unbranded and branded partnership cattle sold from the La Salle County ranch, if computations are made at the lowest prices reflected on the sales slips. Since the number of branded and unbranded partnership cattle is determinable, appellee, Horton, by taking the lowest prices on each sales slip for his cattle, would prove his case with no possible harm to Amberson. Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929. Whether the jury did that, we have no way of knowing, since no effort was made to isolate or separate the prices.

In our opinion, sales prices were proved by sufficiently certain evidence as

to all sales except these commingled sales of the cattle shipped from La Salle County, and it is sufficiently proved in that instance, if the minimum prices are accepted. If appellee will compute the total sales of the partnership cattle, both branded and unbranded, taken at the highest figures allocable to the sales of cattle on each sales slip and subtract from that figure a computation based on the total sales of partnership cattle, both branded and unbranded, taken at the lowest figures allocable to the sales of cattle on each sales slip and remit one-half of that difference, no harm could occur to appellant. Such a remittitur would clean out all possible speculative, uncertain, and conjectural estimates and would leave only the gross income which was proved with certainty. The gross income could not be less than the minimum prices received. In that manner the income would be based on the minimum sales prices received for the known number of partnership cattle sold.

Appellant also urges that the trial court should have sustained his exception to the pleadings, pointing out that appellee failed to allege an accounting between the partners. Subject to certain exceptions, the general rule is that an accounting between partners is a condition precedent to an action on partnership claims and transactions. Greene v. Condor Petroleum Co., Tex.Civ.App., 121 S.W.2d 381, reversed on other grounds, Com.App., 135 Tex. 215, 140 S.W.2d 844; Miller v. Howell, Tex.Civ.App., 234 S.W.2d 925; Rose v. Motes, Tex.Civ.App., 220 S.W.2d 734; Warner v. Winn, Tex.Civ.App., 191 S.W.2d 747; Masterson v. Allen, Tex.Civ.App., 69 S.W.2d 539. See Annotation 168 A.L.R. 1088; 68 C.J.S., Partnership, §§ 110, 374, 407; 32 Tex.Jur., Partnership, § 210.

If the court committed error in not requiring an accounting in advance of trial, as applied to this case, it was harmless error. In our opinion, it was not such an error as amounted to a denial of the rights of the appellant, as was reasonably calculated to cause and probably did cause the rendition of an improper judgment, nor did it probably prevent appellant from mak-ing a proper presentation of the case to the appellate court. Rule 434, T.R.C.P. See Ingham v. Ingham, Tex.Civ.App., 240 S.W.2d 409.

Horton kept the records of sales through the San Antonio market. Amberson, a partner in that separate undertaking between the parties, had equal and complete access to those records. He in fact had and used at the trial, photostats of all those pertinent records. Moreover, Amberson had all the original records of the partnership income from the other sales. He made and kept all the original records as to the expenses, since he was the one who made the payments. Those records were under his control, not Horton's. When the affairs of the commission office partnership were wound up, Amberson's personal auditor made the audit that formed the base upon which it was wound up. That separate partnership dissolution was not disputed. Amberson's personal auditors also made an audit of all the cattle transactions here involved. He did not offer in evidence the audit or the findings of his auditors, though one was present at the trial. When the trial commenced, Amberson and his auditors were in possession of all the facts that Horton had, as well as the facts with reference to the partnership expenses that Horton did not have. Except for a conclusion by Amberson himself, no effort was made to prove the expense items were other than what Horton proved. Amberson broadly stated that his annual expenses amounted to $75,000. Horton, to rebut that testimony, called one of Amberson's auditors, who testified that the figure included expenses on several other extensive and non-partnership operations which, of course, were irrelevant. Amberson never called or questioned his auditor with reference to expenses. Those were facts that Amberson said his auditor had.

A reference under Rule 172, T.R.C.P., would have shortened this record and relieved the plaintiff of his laborious method of proof. It may have avoided proof during the trial of each separate item and sales slip and the separate isolation of Amberson and partnership cattle on each ship-

ment by resort to the brand records. But Amberson cross-examined the witnesses on each of these items and succeeded in isolating his cattle from other cattle. In our opinion, all information has now been presented that an auditor could present. An accounting would have simplified the case, but to send it back for retrial would accomplish nothing more than was accomplished by the accounting during trial. It would now be nothing more than a legal ceremony giving recognition to a rule that has been otherwise satisfied. Both parties have fully offered all their evidence touching the accounting. Hogan v. Hidalgo County, Tex.Civ.App., 246 S.W.2d 709, 712. This conclusion no doubt was the conclusion of the trial court, for he carried the exception along with the case, and at its conclusion overruled the exception.

The manner of submitting the jury issues was also challenged. The plaintiff, in submitting the case to the jury, submitted a single issue covering all the various cattle sales, and inquired, "What do you find from a preponderance of the evidence was the net profit, if any, made by the partnership, if any, out of the purchase and sale of said cattle?" Amberson objected to the issue on the grounds, among others, that it was confusing and did not state what cattle were inquired about. Amberson further objected during the argument, when Horton's counsel asked the jury to take into consideration the cattle left on Amberson's ranch. Horton had testified that the partners had reached an agreement by which Amberson would buy the cattle from the partnership. Amberson denied this and that left the matter for jury consideration. The evidence supports Horton's claim that Amberson bought these cattle from the partnership.

The judgment will be affirmed, upon condition that the appellee, Horton, within a period of fifteen days, files with this Court a remittitur of one-half of the difference between the partnership cattle shipped from La Salle County, taken at the highest sales prices reflected by the sales tickets and the partnership cattle taken at the lowest sales prices reflected by the sales tickets. In the event this is not done, the case will be reversed and remanded for another trial.

On Motion for Rehearing.

Appellee has filed a remittitur in the amount of $3,256.47, as permitted in the Court's original opinion. The judgment of the trial court is affirmed in the amount of $52,208.53. Appellant is granted leave to file an amended motion for rehearing, within fifteen days hereof.